UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for BAFC 2006-1, | ) ) ) | |
| *Plaintiff* | ) ) ) | |
| v. | ) ) | Civil No. 09-84-P-S |
| GORDON T. JAMES, | ) ) | |
| *Defendant & Third-Party Plaintiff* | ) ) ) ) | |
| v. | ) ) | |
| GMAC MORTGAGE, LLC, et al., | ) ) | |
| *Third-Party Defendants* | ) ) ) | |
| MAINE REVENUE SERVICES, | ) ) | |
| *Party-in-Interest* | ) | |

*MEMORANDUM DECISION ON MOTION TO STRIKE AND RECOMMENDED DECISION ON MOTION TO DISMISS COUNTERCLAIMS*

The plaintiff, U.S. Bank National Association, as trustee for BAC 2006-1, a trust, and third-party defendants GMAC Mortgage, LLC, and Wells Fargo, N.A., move to dismiss the defendant's counterclaim and certain third-party claims pursuant to Fed. R. Civ. P. 12(b)(6). Counterclaim Defendant and Third Party Defendants' Motion to Dismiss Defendant's Counterclaim[][1] ("Motion to Dismiss") (Docket No. 15) at 1. The same parties move to strike

---

[1] The plaintiff and the third-party defendants who bring this motion refer to the object of their motion to dismiss as the counterclaim, although as to the third-party defendants it can only be a third-party complaint. The defendant presents a single set of allegations as both. Counterclaim[] and Third-Party Complaint, included in Defendant's Answer, Affirmative Defenses, Counterclaim[] and Third Party Complaint (Docket No. 12), beginning at 5.

1

the affidavit of defendant Gordon T. James that was submitted in support of his opposition to the motion to dismiss.  Counterclaim Defendant and Third Party Defendants' Motion to Strike Affidavit of Gordon James ("Motion to Strike") (Docket No. 23) at 1.  I grant the motion to strike and recommend that the court grant the motion to dismiss in part.

### I.  Factual Background

The complaint and counterclaim include the following relevant factual allegations.

The plaintiff, a national bank, is the trustee of the BAFC 2006-1 Trust, a real estate mortgage investment conduit trust that holds the note and mortgage that are at issue in this foreclosure proceeding (the "Trust").  First Amended Complaint for Foreclosure by Civil Action ("Complaint") (Docket No. 9) ¶ 1.  The defendant is a resident of Arundel, Maine, who, on or about June 30, 2005, executed and delivered to third-party defendant Quicken Loans, Inc., a note in the principal amount of $207,000.00 (the "Note") and a mortgage, which was recorded in the York County Registry of Deeds, Book 14533, Page 740 (the "Mortgage").  *Id*. ¶¶ 2, 8-9.  The Mortgage was given to secure the Note.  *Id*. ¶ 9.

Third-party defendant Wells Fargo, N.A., is the master servicer and securities administrator of the Trust.  *Id*. ¶ 3.  It is not the servicer of the Note or the Mortgage, nor does it service the mortgages and promissory notes that make up the corpus of the Trust.  *Id*.  Third-party defendant GMAC Mortgage, LLC, is the sub-servicer of the Note and Mortgage and the servicer of the Note and Mortgage as that term is defined in 12 U.S.C. § 2605(i).  *Id*. ¶ 4.  Third-party defendant Quicken Loans was the originating lender and the original holder of the Note and Mortgage.  *Id*. ¶ 5.

Party-in-interest Maine Revenue Services may have an interest in the property that is the subject of this foreclosure action by virtue of an income tax lien recorded in the York County Registry of Deeds on September 10, 2008, in Book 15486, Page 825. *Id.* ¶ 6.

Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Quicken Loans, Inc., as the beneficiary of the Mortgage, assigned the Mortgage to the plaintiff by an assignment of mortgage dated May 28, 2008, and recorded in the York County Registry of Deeds in Book 15431, Page 465. *Id.* ¶ 11. GMAC was subsequently appointed servicer of the Note and Mortgage. *Id.* ¶ 12. Currently due on the Note and Mortgage is the principal amount of $204,540.41, interest thereon to February 23, 2009, in the amount of $1,740.27 with additional interest accruing at the contract rate, late fees of $703.05, escrow advances of $4,518.75, and property inspection fees of $112.50, together with any insurance, attorney fees and costs, and real estate taxes paid by the plaintiff. *Id.* ¶ 13.

On or about February 1, 2008, GMAC sent the defendant a notice of default. *Id.* ¶ 14. The defendant failed to reinstate the Mortgage within the time set forth in the notice. *Id.* The defendant has breached a condition of the Mortgage in that he has failed to pay to the plaintiff the principal sum and interest thereon as set forth in the Note. *Id.* ¶ 15. Payments of principal and interest are due for the period December 1, 2007, to and including March 1, 2009, and have not been paid, despite a demand made in accordance with the terms of the loan documents. *Id.*

The plaintiff seeks foreclosure of the Mortgage and a sale of the mortgaged real estate pursuant to 14 M.R.S.A. § 6321 *et seq. Id.*

Quicken Loans is regularly engaged in the business of making consumer loans and is a creditor as that term is defined in 9-A M.R.S.A. § 1-301(14) and 15 U.S.C. § 1602. Defendant's Answer, Affirmative Defenses, Counterclaim[] and Third Party Complaint to Plaintiff's First

Amended Complaint ("Counterclaim") (Docket No. 12) ¶ 8 at 6.  Soon after June 30, 2005, Quicken Loans assigned the loan to Wells Fargo. *Id*. ¶ 9.  Wells Fargo is regularly engaged in the business of making consumer loans and is a creditor as defined in 9-A M.R.S.A. § 1-301(14) and 15 U.S.C. § 1602. *Id*. ¶ 11.

The Mortgage represents a refinancing of the defendant's mortgage on his primary residence at 1088 Alfred Road in Arundel, Maine. *Id*. ¶ 12.  The Note was a ten-year, interest-only loan with an interest rate of 5.5%. *Id*. ¶ 14.  The defendant's monthly payment was $948.75, to increase to $1,423.93 after ten years. *Id*. ¶ 15.  However, on the Truth in Lending Disclosure Statement, the monthly payment was listed as $1,029.83 for ten years, then $1,458.43 for 51 months, and then $1,423.93 for 189 months. *Id*. ¶ 16.  The Statement did not disclose a requirement of private mortgage insurance. *Id*. ¶ 17.  A Good Faith Estimate provided in the closing documents indicates that private mortgage insurance would not be charged as part of the loan. *Id.* ¶ 18. However, a Monthly Payment Letter dated June 30, 2005, states that private mortgage insurance is included in the monthly payment. *Id*. ¶ 19.

The $207,000 loan paid off the defendant's existing mortgage in the amount of $197,362.68 and the finance charge totaled $266,921.30 with an annual percentage rate of 6.113%. *Id*. ¶ 20. Settlement charges were $8,866.10. *Id*.  The loan required the defendant to make monthly payments into an escrow account so that the lender could pay for homeowner's insurance and property taxes. *Id*. ¶ 21.  A closing document shows that the defendant paid $1,297.23 at the closing into the escrow account and that $235.06 per month would be for taxes and $11.08 per month would be for homeowner's insurance. *Id*. ¶ 23.

The Concord Group provided homeowner's coverage for the subject property. *Id*. ¶ 25. The lender miscalculated the yearly premium for this insurance. *Id*. ¶ 29.  The defendant should

have been paying $44.00 per month into escrow for the insurance and would have done so had he been correctly informed. *Id*. ¶ 30. As a result of this miscalculation, the defendant incurred unnecessary and exorbitant fees and interest on the outstanding amount due each month. *Id*. ¶ 32. When the renewal payment for this policy was due for the period May 30, 2006, to May 30, 2007, GMAC did not make the payment. *Id*. ¶ 33.

As a result, Concord Insurance cancelled the homeowner's coverage. *Id*. ¶ 35. GMAC then "force-placed" insurance on the property at a much higher rate. *Id*. ¶ 36. These charges were passed on to the defendant's account. *Id*. ¶ 37. The defendant was never notified of the lapse in his policy, the forced-placed insurance, and the increased rates from GMAC or Wells Fargo. *Id*. ¶ 38. GMAC paid $20,879 on a lender-placed policy on the property when the initial insurance would only have cost about $1,600 if GMAC had paid the Concord Group in a timely fashion. *Id*. ¶ 39.

The $20,879 was charged to the defendant's account "and caused GMAC to record him as being delinquent and late on the account." *Id*. ¶ 40. GMAC only refunded $12,114 to the defendant's account. *Id*. ¶ 41. GMAC told the defendant in February 2008 that he was in default on his mortgage and owed $5,404.25. *Id*. ¶ 42. Despite his suspicions that the default was inaccurate, the defendant on February 22, 2008, sent in a bank check in the amount of $5,450 to GMAC. *Id*. ¶ 43. The check was rejected by GMAC. *Id*. ¶ 44.

The defendant sent a notice of rescission to Quicken Loans, GMAC, and the attorneys for the plaintiff on May 12, 2008. *Id*. ¶ 60. On that date, the defendant's counsel delivered a Qualified Written Request to counsel for the plaintiff, outlining the errors in the defendant's escrow account. *Id*. ¶ 67. GMAC did not correct the errors. *Id*. ¶ 68.

**II.  Motion to Strike**

The moving parties, the plaintiff, GMAC, and Wells Fargo, contend that the defendant's affidavit, submitted in support of his opposition to the motion to dismiss, should be stricken from the record because it represents "an improper attempt to supplement or amend Defendant's Counterclaims or to submit untested allegations as if they are facts."  Motion to Strike at [1]-[2].

To begin, when a motion to dismiss is based on Fed. R. Civ. P. 12(b)(6), as it is in this case, Motion to Dismiss at 1, "a court must accept as true all the factual allegations in the [counterclaim,]" *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  Thus, it is the essence of a Rule 12(b)(6) motion that the claimant's "untested" allegations are treated "as if they are facts."  Motion to Strike at [1]-[2].

That being said, the defendant's proffered justification for submitting the affidavit is not persuasive.  He contends that his affidavit fits within the narrow exception to the general rule that a court ruling on a Rule 12(b)(6) motion may not consider documents outside of the complaint or not expressly incorporated therein.  *See, e.g., Alternative Energy*, 267 F.3d at 33.  That exception provides that the court may consider as well "documents the authenticity of which [is] not disputed by the parties; for official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint."  *Id*.  The defendant asserts that certain paragraphs of his affidavit are "central to" his counterclaim and that the moving parties "do not dispute the authenticity" of his affidavit."  Defendant's Opposition to Plaintiff's Motion to Strike (Docket No. 25) at [2].

This argument misconstrues the exception set out in *Alternative Energy*.  The mere fact that the defendant's affidavit is "authentic" does not mean that the court may consider it in connection with the motion to dismiss.  In this instance, it is a document created specifically to

oppose the motion to dismiss. The documents contemplated by the Rule 12(b)(6) exception exist independently of the pleadings and of the case itself. If the defendant's interpretation of the exception were correct, parties opposing motions to dismiss could easily defeat the motions by creating an "authentic" document to support their positions. The exception would then swallow the rule.

Nor can the defendant's affidavit, or any given paragraph from that affidavit, reasonably be characterized as a "document . . . central to" the counterclaim. A document that is central to the counterclaim would have had to be in existence when the counterclaim was filed. Finally, were this court to consider the affidavit, it would have to convert the motion to dismiss into one for summary judgment. *See, e.g., Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 958 F.2d 15, 18-19 (1st Cir. 1992). I decline to do that.

The motion to strike the defendant's affidavit is granted.

### III.  Motion to Dismiss

### A.  Applicable Legal Standard

As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).[2]

---

[2] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U. S. at 561 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy,* 267 F.3d at 33.  As noted above, ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*.  "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citation and internal quotation marks omitted).

## B. Discussion

The moving parties address each claim asserted in the counterclaim in the order in which it appears in the counterclaim.

### 1. TILA and MeTILA (Quicken Loan)

Count I of the counterclaim alleges that third-party defendant Quicken Loans Inc. violated the truth in lending provisions of the Maine Consumer Credit Code, 9-A M.R.S.A. § 8-102 *et seq.* ("MeTILA") and the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA") by failing to make all disclosures required by the statutes in the manner required by the statutes.  Counterclaim ¶¶ 50-57.  The defendant also alleges that Quicken Loans violated the statutes by failing to deliver two notices of his right to cancel.  *Id*. ¶ 59.  The only allegation against the plaintiff and one other third-party defendant, GMAC, in this count is that they did not respond properly to a notice of rescission that he sent to them and to Quicken.  *Id*. ¶ 60.  Third-party defendant Wells Fargo is not mentioned in this count.

The defendant bases his contention that Quicken "violate[d] the clear and conspicuous standard" of TILA on the fact that some documents presented to him at the closing listed a monthly amount for private mortgage insurance ("PMI") while the truth-in-lending statement did not, and some documents listed monthly payment totals that differed from that in the truth-in-lending statement. Defendant Gordon James' Opposition to Plaintiff and Third Party Defendant Motion to Dismiss ("Opposition") (Docket No. 22) at 9-10.

The federal statute at issue requires that disclosures be made by a creditor subject to TILA[3] "clearly and conspicuously, in accordance with regulations." 15 U.S.C. § 1632(a). Those disclosures include the identity of the creditor; the amount financed (as calculated in a manner prescribed by the statute); the finance charge; the finance charge expressed as an annual percentage rate; the sum of the amount financed and the finance charge; the number, amount, and due dates or period of payments scheduled; descriptive explanations of these terms; a statement that a security interest has been taken in identified property; any charge that may be imposed solely on account of a late payment; a statement concerning rebates and penalties in case of refinancing or prepayment in full; a statement referring the consumer to the appropriate document for information about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties; a statement indicating whether a subsequent purchaser or assignee of the consumer may assume the debt obligation on its original terms; disclosures concerning a variable interest rate, if applicable; and certain statements when the extension of credit may exceed the fair market value of the dwelling subject to the loan. 15 U.S.C. § 1638. The relevant Maine statutes, 9-A M.R.S.A. §§ 8-202(1) and 8-206, impose essentially the same requirements.

---

[3] There is no dispute that Quicken Loans was a creditor subject to TILA with respect to the loan to the defendant that is at issue in this proceeding.

In this case, the truth-in-lending form provided to the defendant by Quicken appears to display all of the required information "clearly and conspicuously." Federal Truth-in-Lending Statement (Counterclaim Exh. 1). Indeed, the defendant does not contend that this document, standing alone, falls short of the statutory requirements. It is only when this document is considered along with others provided to the defendant at closing that the defendant contends that the truth-in-lending form provided by Quicken is no longer clear and conspicuous.

The defendant does not identify any statutory or regulatory provision requiring that PMI be separately noted on the truth-in-lending form. The moving parties assert that a comment to the applicable federal regulation requires only that the amount charged for PMI be included in the total payment amount disclosed on the truth-in-lending statement, which is what the moving parties assert occurred in this case. Motion to Dismiss at 6. The defendant relies instead on what he characterizes as "contradictions and inconsistencies" between the information in the truth-in-lending form and the information provided on other documents, and case law that he claims holds that such inconsistencies render the completed truth-in-lending form fatally unclear. Opposition at 10-13.

The court cannot reach these arguments, however, because the moving parties rely on an essential fact that is not evident from the documents that are reasonably characterized as being either expressly incorporated in the counterclaim, central to the claims asserted in Count I of the counterclaim, or sufficiently referred to in the counterclaim. *Alternative Energy*, 267 F.3d at 33. It is not possible to glean from the face of any document properly before the court in connection with this motion to dismiss that the amount charged for PMI is included in the total payment amount disclosed on the truth-in-lending statement.

10

While it may perhaps be possible to determine the amount by comparing certain figures in certain documents and performing the necessary mathematical calculations, the moving parties have not made that process explicit in their submissions.  In the summary judgment context, this court does not engage, *sua sponte,* in a search of the documents properly before it in order to find facts that might support a moving party's position in connection with its motion.  *See* Local Rule 56(f).  Here, evidentiary considerations are even more constrained by the rules of law applicable to motions to dismiss, and such a search would be even more inappropriate.  The parties' submissions with respect to Count I of the counterclaim are much better suited to the summary judgment milieu, where a fully-developed factual record will be before the court.

As to third-party defendant Wells Fargo, it is not mentioned in Count I of the counterclaim.  The only factual allegations in the counterclaim concerning Wells Fargo – the first 45 paragraphs of the counterclaim are incorporated by reference into Count I, Counterclaim ¶ 46 – are that "soon after the closing on June 30, 2005, the subject loan was assigned to Wells Fargo" and that the defendant "was never provided with notice of the lapse in his [homeowner's insurance] policy, the forced-placed insurance, and the increased rates from GMAC or Wells Fargo."  *Id*. ¶¶ 13, 38.

Neither of these allegations can reasonably be construed to allege that Wells Fargo thereby violated either TILA or MeTILA.  The defendant spends considerable time discussing his claims for rescission, Opposition at 15-16, but that claim is not asserted against Wells Fargo in the counterclaim, Counterclaim ¶ 60.  Accordingly, third-party defendant Wells Fargo is entitled to dismissal of any claims that the defendant purports to assert against it in Count I of the counterclaim.

GMAC and the plaintiff argue that they cannot be held liable for any violations of TILA and MeTILA by Quicken Loans because any such violations were not apparent on the face of the disclosure statement. Motion to Dismiss at 10-11. This is a correct statement of the law, so far as it goes. 15 U.S.C. § 1641; 9-A M.R.S.A. § 8-209(5). Whether the disclosure statement can be determined to be incomplete or inaccurate by a comparison between it and any itemization of the amount financed, the note, or any other disclosure of disbursement, 15 U.S.C. § 1641(e)(2), is a question hotly disputed by the parties. Motion to Dismiss at 11, Opposition at 13-14, Counterclaim Defendant and Third Party Defendants' Reply in Further Support of Their Motion to Dismiss (Docket No. 24) at 5. It is not appropriate for resolution in the context of a motion to dismiss.

The same is true with respect to the allegations contained in Count I that Quicken Loans did not deliver two notices of the defendant's right to cancel the transaction in accordance with statutory requirements and that Quicken Loans, GMAC, and the plaintiff did not respond properly to the defendant's purported rescission of the transaction. Counterclaim ¶¶ 59-60. All that the court need address at this time with respect to these issues is the moving parties' contention that the notice is barred by the applicable statutes of limitations, 15 U.S.C. §§ 1635(f), 1640(e) and 9-A M.R.S.A. § 8-204(6).

The moving parties state that "[t]he third anniversary of the James loan passed on June 30, 2008." Motion to Dismiss at 11. This action was filed on March 6, 2009, Docket No. 1, and that appears be the date that the moving parties consider operative for purposes of the statutes of limitations. However, as the defendant points out, Opposition at 15, it is the exercise of the right of rescission that is limited to three years after the relevant date, 15 U.S.C. § 1635(f); 9-A M.R.S.A. § 8-204(6), and he purported to exercise that right by sending notices of rescission to

12

Quicken Loans, GMAC, and the attorneys for plaintiff on May 12, 2008, within the three-year period. Counterclaim ¶ 60.[4] The operative act in exercising the right of rescission is notice to the creditor, not filing an action in court. 15 U.S.C. § 1635(a); 9-A M.R.S.A. § 8-204(1). The moving parties take nothing by this argument.

Finally, the moving parties contend that any claim based on the defendant's asserted right of rescission must be dismissed because the counterclaim does not allege that the defendant tendered a return of the loan proceeds when he notified the plaintiff, GMAC, and Quicken Loans that he was invoking his right of rescission. Motion to Dismiss at 12. They rely on *New Maine Nat'l Bank v. Gendron*, 780 F. Supp. 52 (D. Me. 1991), in this regard. The defendant responds, without citation to authority,[5] that "[t]he issue of tender upon rescission is one that is dependent on all the facts of the case and therefore[] it is premature to decide this issue in a motion to dismiss." Opposition at 15. He suggests that some "violations of state and federal laws . . . would offset any amount tendered[,]" apparently intending the court to draw from that fact the conclusion that the obligation to tender would be excused under such circumstances. *Id.*

I am not inclined, in the course of resolving a motion to dismiss a counterclaim, to make new law in this area. In *Gendron*, Judge Carter of this court found only that a court may condition the right of rescission of a loan under TILA on the tender of return of the loan proceeds. He went on to note that "[t]he exercise of the Court's discretion [in this regard] will

---

[4] In his memorandum of law, the defendant broadens the list of those to whom he sent notices of rescission to include the "attorneys for the Movants and . . . Quicken Loans." Opposition at 15. It is the counterclaim that governs, and it alleges only that such notices were sent to Quicken Loans, GMAC, "and the attorneys for the Plaintiff." Counterclaim ¶ 60. The defendant cannot bring Wells Fargo back into Count I by attempting to supplement the counterclaim with his brief.

[5] The sole case cited by the defendant in connection with this issue, *Ray v. CitiFinancial, Inc.*, 228 F.Supp.2d 644, 670 (D. Md. 2002), is cited for the unremarkable proposition that "[t]here are many factors and considerations that the Court may evaluate in fashioning a remedy [for a violation of a plaintiff's right of rescission]." Opposition at 15. That proposition is of no assistance with respect to the question of whether the plaintiff in this case was required to tender the proceeds of the loan at the time he provided some of the parties with a notice of rescission. With respect to the issue before the court, *Ray* holds, as does this court in *Gendron*, that a court may, in its discretion, condition effective rescission under TILA to circumstances in which the plaintiff makes such a tender. 228 F.Supp.2d at 670; *Gendron*, 780 F. Supp. at 60.

involve factfinding[.]" 780 F. Supp. at 60. That statement suggests, rather strongly, that resolution of this issue is inappropriate in the context of a motion to dismiss.

With the exception noted above recommending dismissal as to Wells Fargo, the motion to dismiss Count I of the counterclaim should be denied.

### 2. *Count II*

Count II of the counterclaim alleges that the plaintiff and all of the third-party defendants violated the Maine Consumer Credit Code, specifically, 9-A M.R.S.A. § 9-305-A, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. Counterclaim at 13. The claims arise from the alleged failure to make timely payment of the premium on the homeowner's insurance policy covering the mortgaged property, which in turn led to the lapse of the insurance and the "force-placing" of replacement insurance that carried an "exorbitant" premium, and then to "inaccurate notices of default." *Id*. ¶¶ 64-66. The defendant alleges that he notified the plaintiff of errors in his escrow account and that the plaintiff failed to correct the errors within 60 days, in violation of 12 U.S.C. § 2605(e)(2).

The moving parties contend that "any alleged errors were innocent and/or corrected," so that the defendant is not entitled to recover on this basis. Motion to Dismiss at 13. They assert that the defendant could have discovered at closing the error made by Quicken Loans and "the closing agent" in recording the annual premium for the homeowner's insurance as $133.00 per year but that the error "could not be determined by reviewing the closing documents." *Id*. They next observe that GMAC was allowed by the terms of the mortgage to purchase alternate insurance when the insufficient payments caused the initial policy to be cancelled. *Id*. They point out that GMAC has "corrected the escrow account figures for the annual hazard insurance premium and deducted any amounts that were erroneously charged to the escrow account of

James." *Id*. Thus, they conclude, the defendant has suffered no damages as a result of any errors alleged in Count II and accordingly cannot press this claim, citing 12 U.S.C. § 2605(f)(1)(a). *Id*. at 13-14. They do not mention the Maine statute cited in the counterclaim.

The defendant responds that it was not his responsibility to point out GMAC and Quicken Loans' mistakes and that "as the escrow agent for Mr. James, [Quicken and GMAC] owed him a duty of utmost care and trust which they breached." Opposition at 16. He contends that GMAC's "own accounting" indicates that it still owes him $8,756.00 in premium refunds from the wrongfully-obtained insurance. *Id*. at 17.

This is precisely the sort of factual dispute that cannot be resolved in the context of a motion to dismiss. Neither side cites case law that is particularly helpful, let alone dispositive. In addition, the statute cited by the moving parties for the proposition that "[d]amages are an essential element for any claim for relief and without them the claim must be dismissed[,]" Motion to Dismiss at 14, does not support that assertion. It merely specifies what damages may be awarded; it does not expressly bar recovery for violation without injury. 12 U.S.C. § 2605(f).

While the defendant's response to the motion to dismiss mentions only Quicken Loans and GMAC, the presentations of the parties do not suggest any reason for disregarding the fact that the counterclaim itself makes these allegations against the plaintiff and Wells Fargo as well.

The motion to dismiss Count II of the counterclaim should be denied.

### 3. Count III

Count III of the counterclaim alleges that the plaintiff and all of the third-party defendants violated the Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S.A. §§ 206-14, by failing to provide clear and concise disclosures of the material terms of the loan, miscalculating and "misappropriating" funds in the escrow account, notifying the defendant falsely that he was

in default on the loan, refusing to accept the defendant's check that would have timely cured the alleged default, bringing a wrongful foreclosure action, failing to provide annual escrow statements, and failing to perform escrow analysis on the defendant's account. Counterclaim ¶ 71.

The moving parties contend that none of these actions or inactions meets the definition of prohibited conduct under the UTPA, and that none of these acts caused the defendant to lose any money or property. Motion to Dismiss at 14. It follows, they assert, that they cannot be charged with violation of the UTPA. *Id*. The defendant, citing the definition of a deceptive act or practice under the UTPA, responds that each of the alleged acts was deceptive, and that each of the disclosures provided at the time of closing was misleading and misrepresented the true terms of the loan. Opposition at 17. Finally, because whether a particular act is unfair or deceptive "is determined on a case-by-case basis and '[t]he definitions of "unfair" and "deceptive" are questions of fact,'" citing *Darling v. Western Thrift & Loan*, 2009 WL 426290 (D. Me. Feb. 20, 2009), the defendant contends that "this issue can only be determined in light of all the facts presented at trial[.]" *Id*. at 18.

In order to be unfair under the UTPA, an act or practice "(1) must cause, or be likely to cause, substantial injury to consumers (2) that is not reasonably avoidable by consumers and (3) that is not outweighed by any countervailing benefits to consumers or competition." *GxG Management LLC v. Young Bros. & Co.*, 2007 WL 551761 (D. Me. Feb. 21, 2007), at *9. It may well be, as the moving parties allege, that the defendant will not be able to prove that any of the alleged acts or omissions caused him substantial injury, but that is a matter requiring factual findings, or, at least, presentation to the court via summary judgment procedures.

An act or practice is deceptive under the UTPA

> if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances. A material representation, omission, act or practice involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product. An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's good faith or lack of intent to deceive.

*Darling v. Western Thrift & Loan*, 600 F.Supp.2d 189, 202 (D. Me. 2009) (quoting *State v. Weinschenk,* 2005 ME 28, ¶ 16, 868 A.2d 200, 206). Again, the defendant may have difficulty proving that each of the listed acts or omissions was material and likely to mislead customers, but that is a matter for resolution at trial or on a motion for summary judgment, not a motion to dismiss.

On the showing made, the motion to dismiss Count III should be denied.

*4. Other Arguments*

The plaintiff contends that any claims asserted against it in Count II under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i), and 9-A M.R.S.A. § 8-103(Z) must be dismissed because those statutory requirements apply only to servicers of loans, and the plaintiff is not the servicer of the defendant's note, escrow account, or mortgage. Motion to Dismiss at 15-16.

The defendant responds that the plaintiff is not entitled to dismissal of Count II on this basis because it "voluntarily accepted assignment of both the Note and Mortgage," making it "liable for the acts of [its] servicer, GMAC, under either a theory of assignee liability and/or agency." Opposition at 19. The problem with this argument for the defendant is that the counterclaim does not allege that GMAC was acting as the agent of the plaintiff or that the plaintiff held some sort of "assignee liability" for the acts or omissions of GMAC. The

17

defendant's discussion of agency law, *id*., accordingly is beside the point. The counterclaim alleges only that the plaintiff is directly liable for the injuries alleged in Count II. This new theory of the defendant cannot be allowed to save the counterclaim by afterthought.

In the absence of any suggestion by the defendant to the contrary, I assume that the same defect exists with respect to the defendant's pleading in Count II under state law.

The plaintiff is entitled to dismissal of Count II of the counterclaim as against it.

Third-party defendant Wells Fargo seeks dismissal of all counts on essentially the same basis. Motion to Dismiss at 16-17. It asserts that it is not the servicer of the loan and was never an assignee lender or holder of the note or mortgage. *Id*. at 16. It is only the master servicer and securities administrator of the BAFC 2006-1 Trust. *Id*. I have already recommended dismissal of Count I as to Wells Fargo.

The defendant responds that Wells Fargo, "by the Movants' admission, is the master servicer of the loan and hired and supervised GMAC[,]" citing section V of the Motion to Dismiss. Opposition at 19. That is not what the moving parties "admitted" in that section of the motion. As I noted, the moving parties asserted that Wells Fargo is the "master servicer and securities administrator of the BAFC 2006-1 Trust," *not* of any loan or mortgage owned by the Trust. Motion to Dismiss at 16-17. The motion does "admit" that Wells Fargo hires and supervises entities like GMAC that do service such loans or mortgages, but this fact can only support the defendant's opposition if that hiring and supervision makes GMAC the agent of Wells Fargo with respect to the defendant's loan. Again, the counterclaim is devoid of any allegation that GMAC acted as Wells Fargo's agent while servicing the defendant's note and mortgage.

18

The defendant asserts, without citation to authority, that "[a]s master servicer, Wells Fargo is liable directly for violations involving the servicing of the loan under the MCCC [the Maine Consumer Credit Code] and RESPA [the federal Real Estate Settlement Procedures Act]." Opposition at 19. This is a reference to Count II. In the absence of any authority for this assertion, it appears to me that both statutes impose liability on a servicer, and that the defendant has not shown that Wells Fargo meets the definition of that term under the circumstances set forth in the counterclaim. *See* 12 U.S.C. § 2605(i)(2)-(3); 9-A M.R.S.A. § 8-103(Z) & (AA). On the showing made, Wells Fargo is entitled to dismissal of Counts II and III of the third-party complaint against it.

## IV.  Conclusion

For the foregoing reasons, the motion to strike (Docket No. 23) is **GRANTED**; and I recommend that the motion to dismiss (Docket No. 15) be **GRANTED** as to third-party defendant Wells Fargo, NA, and, as to Count II of the counterclaim and third-party complaint, in favor of the counterclaim defendant and plaintiff U.S. Bank National Association, and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of August, 2009.

                                                  /s/  John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge