UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION<br>AS TRUSTEE FOR BAFC2006-1,<br><br>      Plaintiff<br><br>vs.<br><br>GORDON T. JAMES<br><br>      Defendant<br><br>and<br><br>MAINE REVENUE SERVICES<br><br>      Party-In-Interest<br>_____<br>GORDON JAMES,<br><br>      Third Party Plaintiff<br><br>vs.<br><br>GMAC MORTGAGE LLC,<br><br>WELLS FARGO, NA,<br><br>and<br><br>QUICKEN LOANS INC.<br><br>      Third-Party Defendants<br>_____ | DOCKET NO. 2:09-cv-84 |

**DEFENDANT'S SECOND MOTION FOR LEAVE TO AMEND WITH
INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R.Civ.P. 15(a)(2), Defendant/Third-Party Plaintiff, Gordon James, moves this Court for leave to amend his Answer, Counterclaims and Third-Party Complaint. As grounds therefore, the Defendant states as follows:

## I.   BACKGROUND

After Plaintiff U.S. Bank National Association as Trustee for BAFC 2006-1 (hereinafter "US Bank") filed a foreclosure action against Defendant in Maine District Court on January 29, 2009 and Defendant filed an Answer and Affirmative Defenses, and a Third Party Complaint on February 17, 2009, the matter was removed to the Maine Superior Court then to this Court on March 6, 2009. (Docket #1).  US Bank filed an Amended Complaint on March 16, 2009 (Docket #9) and Defendant filed an Answer to the Amended Complaint, a Third Party Complaint and Counterclaims on April 2, 2009. (Docket #12).   US Bank and Third Party Defendant GMAC Mortgage, LLC ("GMAC") filed a Motion to Dismiss the Counterclaims on April 17, 2009. (Docket #15).  The Motion to Dismiss was granted in part and denied in part on August 26, 2009. (Docket #29). The Court entered the Scheduling Order on August 26, 2009 (Docket #30) with a deadline to amend pleadings of November 12, 2009.  Defendant filed a Motion to Amend Answer to Amended Complaint, Third Party Complaint and Counterclaims on November 10, 2009 with US Bank, GMAC and Third Party Defendant Quicken Loans, Inc ("Quicken Loans") filing objections on November 18, 2009. (Docket #38, #40 and #41). Defendant filed a response to the objections to the Motion to Amend on November 24, 2009. (Docket #44).  A decision on Defendant's First Motion to Amend has not yet been rendered.  As not to cause further delay, Defendant now brings this Second Motion to Amend which incorporates the amendments requested in Defendant's First Motion to Amend.

## II.  STANDARD OF REVIEW

Motions to Amend the Pleadings are governed by Fed. R. Civ. P. 15 and 16. When a Motion to Amend comes after the deadline set in a Rule 16 Scheduling Order, the motion may be granted on a showing of good cause or excusable neglect. *Kropp v. School Union No. 44*, 238

F.R.D. 329, 330-31 (D.Me. 2006), *see also O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154 (1st Cir. 2004) and *Trans-Spec Truck Service, Inc v. Caterpillar Inc*., 524 F.3d 315, 327 (1st Cir. 2008). The "good cause" standard looks to the diligence of the party seeking the amendment. *O'Connell*, 357 F.3d at 155. To determine if a party has established an excusable neglect argument, the Court must make an equitable determination, "taking into account all of the relevant circumstances…[including] the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Nickerson-Malpher v. Baldacci*, 247 F.R.D. 223, 224 (D.Me.2008) (citations and internal punctuation omitted).   If the party seeking the amendment is found to have good cause or excusable neglect for the delay, the court should allow the amendment.

### III. ARGUMENT

The Defendant seeks to amend his answer and counterclaims to add the counts of Breach of Fiduciary Duty and Negligence as well as facts supporting such claims.  *See* Defendant/ Third Party Plaintiff's Second Amended Answer and Counterclaims, a redlined version of which is attached hereto as Exhibit 1.[1]

This Court set the deadline for Amendment of the Pleadings as November 12, 2009. (Docket #30).  Defendant's Motion is made for good cause and should be granted by the court because unanticipated facts were gathered during discovery and justice so requires an amendment to Defendant's pleadings. *See Roberge v. Lupo LLC, et al.*, 254 F.R.D. 21, (D.Me.2008).   Both objections to Defendant's previous Motion to Amend, one by Quicken

---

[1] The Defendant has provided a redlined version of the proposed amended pleadings to assist the Court in determining which are the proposed amendments.  If the Court requests, the Defendant can produce a final, "clean" version of the pleadings.

Loans and one joint objection by Plaintiff U.S. Bank and GMAC, center on the fact that, at the time of the previous Motion, no allegedly new facts had been discovered. *See generally GMAC, US Bank, and Quicken Responses to Defendant's Motion to Amend* filed November 18, 2009. (Docket #40, 41).   Since those oppositions, facts supporting previously unforeseeable claims have come to light as part of the normal discovery process. To deny Defendant's Motion would result in an incomplete hearing on all the issues and leave Defendant without the opportunity to be made whole. See *Keefer v. Keefer*, 2004 WL 1598713 (Me.Super.) (Court grants Plaintiff's untimely Motion to Amend in order that the merits of the case be fully addressed and waste of judicial resources is reduced.)  Granting the Defendant's motion will have little, if any, prejudice on Quicken Loans, US Bank, and GMAC, and will have little, if any, impact on this judicial proceeding.  The amended claims would not require additional discovery and the deadline for dispositive motions is February 17, 2010. (Scheduling Order; Docket #30). The delay in filing is due, in part, to the facts revealed upon completion of discovery, the difficulty Defendant had in scheduling depositions of the opposing parties, and discovery disputes and conferences which were outside of the reasonable control of the Defendant.   For these reasons, the equitable balance weighs in favor of granting this Motion to Amend.

### IV. FACTS THAT BECAME KNOWN FROM DISCOVERY PROCESS

In the course of discovery including the parties' responses to Requests for Admissions, Interrogatories and Requests for Production of Documents as well as in Depositions, the Defendant discovered facts that would support the proposed amendments to his counterclaims.

#### A. Breach of Fiduciary Duty

In its response to Admissions, Quicken admitted that the subject loan was an escrowed loan and that the Defendant was to make monthly payments into the escrow account for the

purpose of paying homeowner's insurance and property taxes on the subject property. *See* Quicken Loan Inc's Response to Defendant/Third Party Plaintiff's First Request for Admission (hereinafter "Quicken Admissions"), No. 20 attached hereto as Exhibit 2. Quicken admitted that it was the originating lender of the loan, originated on June 30, 2005, and that it did not sell the loan and servicing rights of the loan until on or around July 20, 2005. Quicken Admission No. 35. This transfer date was a new fact that was found out in discovery and revealed that Quicken held the loan, serviced the loan, and as such, acted as the escrow agent for the loan for nearly a month after origination. This was not a loan that was originated and immediately sold on the secondary market as originally believed. Quicken admitted that it alone, without any instructions from GMAC, determined the amount needed in escrow to cover the homeowner's insurance on the subject property and that their system calculated the monthly escrow payment based on data inputted by Quicken employees. Quicken Admissions No. 33; Deposition of Quicken Loans, Inc. represented by Clint Bonkowski (hereinafter "Quicken Deposition") pp.s 56-57, 150 attached hereto as Exhibit 3. Quicken testified that the escrow calculation for the homeowner's insurance premium due to escrow by the Defendant each month were wrong and "entered in error." Quicken Deposition, pp.s 152, 153. Quicken testified that the incorrect information inputted by Quicken into their system was also used to generate certain disclosure forms such as the Monthly Payment Letter and Coupons, Here's How Your Numbers Work. Quicken Deposition 153-155; Quicken Deposition Exhibit 2[2] bates numbered documents QL 311 and 325. Quicken testified that the figures for the disclosed escrow payment on these disclosures were incorrect. Quicken Deposition 153-155. Quicken testified that Sharon Dillon, a Credit Analyst for Quicken was responsible for reviewing the homeowner's insurance policy to ensure

---

[2] Exhibit 2 from the Quicken Deposition is 553 pages and, as such, only the referenced bates numbered pages from that document will be produced as Exhibits to this motion. Those pages are attached hereto as Exhibit 4.

that there was appropriate coverage and inputting the data regarding the homeowner's insurance premium into the Quicken system. Quicken Deposition pp.s 89-90. Quicken testified that that no one at Quicken provided supervision or review of the information that was input by Ms. Dillon. Quicken Deposition 91.

Quicken further testified that its policy in 2005 was to send notice to the insurance company, in this case the Concord Group, providing information on who the new servicer of a mortgage was upon refinancing a loan and that they sent such notice to the Concord Group. Quicken Deposition p. 158. However, the address on the letter referred to by Quicken to the Concord Group was an incorrect address: the letter was addressed to The Concord Group, a New Hampshire based company, but the address was that of the insurance agent, Internet Insurance in Massachusetts. Quicken Deposition Exhibit 2, bate stamped document QL 000352. Quicken testified that it could not explain the discrepancy. Quicken Deposition 160.

Quicken testified that Private Mortgage Insurance, "PMI", was required for the loan. Quicken Deposition p. 122. The PMI was part of the monthly escrow payment calculation. Quicken Deposition Exhibit 2, bates numbered documents QL 000311, 000324, 000325. Quicken testified that there existed a discrepancy on the Truth in Lending Disclosure form regarding the disclosure of the "Amount of Payments" in that one of the payments listed did not include PMI when, according to the PMI Notice and amortization schedule for the loan, it was required. Quicken Deposition 123; Quicken Deposition Exhibit 2 bates numbered documents QL 000318, 000323, 000421. Quicken could not explain this discrepancy. Quicken Deposition 129.

A fiduciary duty exists when one party places his trust and confidence in the other and there is a great disparity of position and influence favoring the one in whom the trust was placed.

*Darling v. Western Thrift and Loan*, 600 F.Supp.2d 189, 204, 205 (February 2009); *Decambra v. Carson*, 953 A.2d 1163, 1166 2008 ME 127; *Fortin v. The Roman Catholic Bishop of Portland,* 2005 ME 57, ¶ 39, 871 A.2d 1208, 1222 *quoting Bryan R.,* 1999 ME 144, ¶ 20, 738 A.2d at 846). The Defendant, a borrower with a 9th grade education, testified repeatedly in his deposition that he placed his trust in Quicken and GMAC, national lenders, to accurately calculate the monthly escrow payment and make accurate payments from his escrow account.[3] "There is a fiduciary relationship created by and inherent in the nature of an escrow agreement. The depositary has been 'denominated a trustee for the parties, charged with the performance of an express trust governed by the escrow agreement." *Progressive Iron Works Realty Corporation v. Eastern Milling Company*, 155 Me. 16, 19, 150 A.2d 760, 762 (1959) *quoting* 30 C.J.S. Escrows § 8, p. 1203. As the escrow agent, Quicken owed the Defendant a duty of loyalty to make accurate disclosures and a duty to exercise a high degree of care to conserve the money and pay an accurate amount to those persons who were entitled to receive it. *See Progressive Iron Works Realty Corporation v. Eastern Milling Company*, 155 Me. 16, 19, 150 A.2d 760, 762 (1959); *Home Loan Corporation v. Texas American Title Co.,* 191 S.W.3d 728 (Ct. App. Tex. 2006) (citing *City of Forth Worth v. Pippen,* 439 S.W.2d 660, 664-65 (Tex.1969)); *See DeCambra v. Carson*, 953 A.2d 1163, 1166 (2008).

It is now known that Quicken was responsible for setting up and creating the escrow account for the subject loan and that it was not a loan that was immediately sold upon origination. Quicken actually held the loan for several weeks and acted on its own as the escrow agent in calculating and establishing the escrow account. In doing so, it breached its fiduciary duty regarding ensuring the accuracy of the figures used and disclosures made to the Defendant.

---

[3] The deposition of the Defendant occurred on January 11 and 13, 2010, and no transcript has yet been produced. Once produced, the Defendant will supplement this motion with such support.

We also now know that GMAC did not just service the loan on or after July 20, 2005 but at some point on or after July 20, 2005, bought the subject loan from Quicken. Quicken Deposition 146; Deposition of GMAC Mortgage, LLC and US Bank represented by Shalini Parker (hereinafter "US Bank/ GMAC Deposition") p. 41 attached hereto as Exhibit 5.  The escrow information was sent electronically by Quicken to GMAC on or around July 20, 2005, almost one month after the closing of the loan, when GMAC purchased the loan from Quicken. Quicken Deposition 146.  GMAC admitted that, as the servicer of the subject loan, they were responsible for collecting, monitoring, and reporting loan payments on the loan account. Third Party Defendant GMAC Mortgage, LLC's Response to Third Party Plaintiff's First Request for Admissions (hereinafter "GMAC Admissions") No. 5 attached hereto as Exhibit 6.  GMAC testified that their escrow department was responsible for making the payments to the homeowner's insurance carrier.  US Bank/ GMAC Deposition pp.s 79-80.  GMAC testified that it did not know of any review performed to verify whether or not the escrow calculations and figures were accurate nor did it know of any policy in place to verify accuracy of escrow figures. US Bank/ GMAC Deposition pp.s 94-95.  GMAC did not know of any independent review by GMAC of the insurance coverage or premium on the subject loan when it acquired the loan.  US Bank/ GMAC Deposition  p.110.  GMAC testified that when they believe there is no homeowners coverage on a property, their policy is to send three letters to the homeowner requesting a copy of the coverage on the dwelling and, if there is no contact by the homeowner, GMAC will send out a notice of lender-placed insurance.  US Bank/ GMAC Deposition pp.s 113-114.  Deposition testimony and documents revealed that GMAC did not inquire about homeowners insurance from the Defendant until October 27, 2005, three months after acquiring the loan.  US Bank/ GMAC Deposition p. 117, Exhibit 2[4] at bates numbered document 000009.

---

[4] Exhibit 2 from the US Bank/ GMAC Deposition is 309 pages and, as such, only the referenced bates numbered

At that point, they did not follow their own policy but rather admit to having sent out one letter on October 27, 2005 and the next letter they claim to have sent out dated December 11, 2005 stating that forced placed insurance had been purchased on the property.  US Bank/ GMAC Deposition p. 126, Exhibit 2 at bates numbered document 000009, 10.  Evidence also produced in response to discovery requests shows that indeed the homeowner did contact GMAC after the first letter November 4, 2005 regarding his insurance policy but, nonetheless, lender placed insurance was placed on the property about four weeks later.  US Bank/ GMAC Deposition pp.s 123, 124, Exhibit 2 at bates numbered document 000010, 264.  Furthermore, evidence received in discovery revealed that GMAC's written policy for lender placed coverage was to place insurance on the property based on the replacement value of the property, which would be based on the last known amount of the coverage purchased by the homeowner. US Bank/ GMAC Deposition Exhibit 2 at bates numbered document 0000000020-23, 000026-27, 000032-33.  Despite this, GMAC placed a policy with a $1,000,000 dwelling coverage limit and an $8,500 annual premium which was paid out of the Defendant's escrow account.  US Bank/ GMAC Deposition Exhibit 2 at bated numbered document 000020, 000022, 000026.  The billing statement that GMAC had from the Concord Group when it acquired the loan stated the dwelling coverage limit for May 2005 on the property was $162,500.  US Bank/ GMAC Deposition Exhibit 2 at bates numbered document 000074.  In fact, it was learned in discovery that the Billing Statement with a coverage date from May 30, 2005 to August 30, 3005 and a premium amount of $133.00 was the only proof of insurance either Quicken or GMAC had for the property despite testifying that they would need the actual policy or declarations page.  Quicken Deposition pp.s 137, 138, 139, Exhibit 2 at bates numbered document QL 000077; GMAC

---

pages from that document will be produced as Exhibits to this motion attached hereto as Exhibit 7.

Deposition pp.s 80, Exhibit 2 at bates numbered document 000074.  Such proof was inadequate from the beginning and contributed to the series of errors in establishing and maintaining the escrow account.  According to this Billing Statement, a payment should have been made by GMAC to The Concord Group by August 30, 2005 to ensure continued coverage but none was made.  GMAC Deposition Exhibit 2 at bates numbered documents 000003-000008, 000074.

GMAC's admissions and testimony as to its responsibilities as escrow agent for the subject loan in collecting, monitoring, and making the payments to the homeowner's insurance carrier shed light on GMAC's fiduciary duties owed to the Defendant and the breach of such duty by failing to ensure the accuracy of the escrow payments made.  As the escrow agent for the Defendant, GMAC owed him a fiduciary duty including the duty to exercise a high degree of care to conserve the money placed in escrow and pay it only to those persons entitled to receive it.  *See Newington Ltd. v. Forrester*, 2008 WL 4908200 (N.D. Tex.); *Ticor Title Ins. Co. v. National Abstract Agency, Inc.*, 2008 WL 2157046 (E.D. Mich. May 22, 2008); *Holder-McDonald v. Chicago Title Insurance Co.*, 188 S.W.3d 244, 247 (Tex. Ct. App. 2006); *Williams v. Land Title Co. of Dallas*, 1997 WL 196345 (Tex. App.-Dallas).  Evidence discovered in the discovery process reveals that GMAC breached this duty when failing to follow their own policies in paying the homeowners insurance premium on the subject property from the Defendant's escrow account.  Documents produced, particularly the Display/History notes of GMAC, and GMAC's testimony reveal that GMAC also breached its fiduciary duty as escrow agent for the Defendant when it failed to properly apply the Defendant's timely cure payment of $5,450.00 despite conflicting dates of when the check was received and why it was returned to the Defendant.  GMAC Deposition pp.s 161-164, Exhibit 2 documents bates numbered 300-304.

As the principal for GMAC, US Bank is directly responsible for GMAC's actions and therefore liable for the breach of fiduciary duty as well.

B. <u>Negligence</u>

As stated more fully above, evidence produced in discovery revealed that Quicken and GMAC, as escrow agents, owed the Defendant a duty of care to make full and accurate calculations and disclosures and ensure the accuracy of amounts requested to and paid from the escrow account. While Quicken and GMAC's actions breached its fiduciary duty to the Defendant, in the alternative, their actions sounded in negligence. Quicken and GMAC negligently failed to exercise reasonable care to provide the Defendant with accurate calculations and disclosures of the escrow account and failed to provide care in payments made from the escrow account. The Defendant was injured in the transaction by Quicken and GMAC's failure to provide accurate information and care in making payments. The escrow was not set up properly from the beginning because of a lack of supervision and review that led to a "data entry error" by Quicken and inaccurate disclosures to the Defendant. Quicken Deposition pp.s 91, 153. Further, GMAC failed to provide any review or oversight of the escrow calculations and perpetuated the problem by failing to follow its own policies in making payments toward homeowner's insurance. GMAC Deposition 76-77, 94-95, Exhibit 2 at bates numbered documents 000009, 000010, 000020, 000022, 000026, 000032. These actions caused the Defendant's escrow account to incur excessive fees and costs, not the least of which was an $8,500.00 charge for a $1,000,000.00 policy on the property. US Bank/ GMAC Deposition Exhibit 2 bates numbered documents 000001, 000007.

### V. CONCLUSION

Based on the new facts brought out in discovery, including but not limited to Quicken's role as escrow agent for the subject account and admissions to inaccurate calculations and computations, and GMAC's admissions to its duties and responsibilities regarding the escrow account along with documents and testimony evidencing its failure to follow its own policies and procedures to carry out those responsibilities, we ask the Court to grant the Defendant/Third-Party Plaintiff motion to amend to add the claims of Breach of Fiduciary Duty, Negligence, and Breach of Contract for Third Party Beneficiary.

Dated at Biddeford, Maine, this 26th day of January, 2010.

MOLLEUR LAW OFFICE

By: */s/ Andrea Bopp Stark*
Andrea Bopp Stark, Esq.
Counsel for Defendant/Third Party Plaintiff
Gordon James
419 Alfred Street
Biddeford, ME 04005-3747
207-283-3777
207-283-4558 Fax
andrea@molleurlaw.com

Case 2:09-cv-00084-JHR   Document 63   Filed 01/26/10   Page 13 of 13