# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION<br>AS TRUSTEE FOR BAFC2006-1,<br><br>   Plaintiff<br><br>vs.<br><br>GORDON T. JAMES<br><br>   Defendant<br><br>and<br><br>MAINE REVENUE SERVICES<br><br>   Party-In-Interest<br>_____<br>GORDON JAMES,<br><br>   Third Party Plaintiff<br><br>vs.<br><br>GMAC MORTGAGE LLC,<br><br>WELLS FARGO, NA,<br><br>and<br><br>QUICKEN LOANS INC.<br><br>   Third-Party Defendants<br>_____ | DOCKET NO. 2:09-cv-84 |

## DEFENDANT/ THIRD-PARTY PLAINTIFF'S MOTION TO COMPEL WITH INCORPORATED MEMORANDUM OF LAW

  NOW COMES the Defendant/Third Party Plaintiff, Gordon T. James (hereinafter Mr. James) by and through counsel, Molleur Law Office, and asks this Court to grant his Motion to

1

Compel Third Party Defendant, GMAC Mortgage LLC (hereinafter "GMAC") to produce documents in response to Mr. James' Request for Production of Documents.

## Background

On September 18, 2009, Mr. James propounded Requests for Production of Documents upon GMAC. GMAC responded to the Requests on October 12, 2009. A true and accurate copy of the Requests and Responses are attached hereto as Exhibit 1. Specifically, Request number 14 seeks "all documentation relating to or comprising internal and/or external communications relating in any manner to Mr. James' loan account or the subject transaction…" Likewise, document request number 5 in the Notice of Deposition to GMAC, a true and accurate copy of which is attached hereto as Exhibit 2, seeks "Any and all internal servicing notes regarding the subject loan account including but not limited to:

   a) a comprehensive customer servicing log;
   b) a chronology of all internal conversations regarding the subject loan account;
   c) a record of all inbound and outbound calls
   d) a record of all correspondence to or from the Defendant;
   e) comments made on the account;
   f) inspections and/or audits made on the account."

In response, GMAC produced a document entitled "Display/History…Notes" ("Notes"), a true and accurate copy of which is attached hereto as Exhibit 3. The Notes start at July 29, 2005 and end at March 24, 2008. Subsequently, on February 2, 2010, counsel for GMAC produced a redacted version of the Notes after March 24, 2008, a true and accurate copy of which is attached hereto as Exhibit 4. Mr. James is seeking any and all entries to the Notes after March 24, 2008. In a Privilege Log produced by GMAC on or around January 10, 2010, a true and accurate copy of which is attached hereto as Exhibit 5, GMAC claimed that the Notes contain information related to the history and servicing of Mr. James' account and were entered and received by counsel for GMAC, loan servicers, and in-house counsel for GMAC. GMAC

claims they engaged counsel for the foreclosure proceedings brought by US Bank in this action on March 24, 2008 and all communications thereafter were associated with the foreclosure and related issues. GMAC claims that the Notes after March 24, 2008 are privileged attorney-client communications and work product. In a subsequent privilege log produced on February 2, 2010, GMAC stated that the redacted portions of the Notes contained communications between counsel and GMAC and were protected due to attorney/ client privilege, work product, and trial preparation.

**Argument**

The essential elements of a sufficient claim of the attorney/client privilege are:

> 1. The asserted holder of the privilege is or sought to become a client;
>
> 2. The person to whom the communication was made (a) is a member of the bar of a court or his subordinate, and (b) in connection with his communication is acting as a lawyer;
>
> 3. The communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing permanently, either (1) an opinion of law, (2) legal services, or (3) assistance in some legal proceeding, (d) and not for the purpose of committing a crime or tort; and
>
> 4. Privilege has been (a) claimed, and (b) not waived by the client.

In Re Blier Cedar Company, Inc.10 B.R. 993, *11 (Bankr. ME 1981).

The claim of privilege attaches only if the subject of each communication satisfies every element of the privilege and does not come within an exception. Id. *citing* United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977); United States v. Gurtner, 474 F.2d 297, 298 (9th Cir. 1973).

From the description in GMAC's privilege log, it does not appear that all communications were between an attorney and an employee of GMAC. Under Author and Recipients of the log, GMAC indicated that communications may have been among loan servicers themselves and not just between loan servicers and counsel. Further, testimony

3

of GMAC's corporate representative indicates that such communications were used by anyone within GMAC to communicate with anyone else at GMAC on matters pertaining to Mr. James' loan whether it was to enter in a telephone call with Mr. James, record a payment received, or any other action taken on the account.   A true and accurate copy of the transcript of GMAC's deposition testimony is attached hereto as Exhibit 6. Specifically on pages 118-119, GMAC's corporate representative's testimony describes the Notes as follows:

Q: Do you know what department inputs this information into the system?
A: It is our general platform. Everybody has access to it.  Everybody's department puts in information
Q: It's your general platform. What does that mean?
A: Meaning the system is used companywide.
Q. Okay. So any employee of GMAC can enter information onto this system; is that right?
A: Yes.
Q. And why would a GMAC employee enter information onto this general platform?
A. It could be when a homeowner calls in, they take a call, saying what the conversation was, or it could also be our billing department when they get a payment, they could have a note in there saying a payment was received; so various functions.

Such testimony signifies that the communications at issue were entered and could be accessed by anyone working on Mr. James' loan at GMAC and were not just communications between GMAC employees and their counsel.  The unredacted portions of the Notes that were produced also evidence that not all communications were made to their counsel but were entered to provide information regarding communications made with Mr. James and other third parties ie: Mr. James' insurance agent.  The communications were not made "solely to a member of the bar of a court or his subordinate, and (b) in connection with his communication is acting as a lawyer…" Id. Furthermore, the communications were made in relation to any aspect of the servicing or history of Mr. James' loan account and therefore were not "for the purpose of securing

4

permanently, either (1) an opinion of law, (2) legal services, or (3) assistance in some legal proceeding…" Id. In addition, the unredacted communications as well as the testimony of the GMAC representative suggest that any privilege that may have existed would have been waived by opening up the general platform to access by any GMAC employee to enter information regarding non-foreclosure related matters on the account.

Even if the Court finds that the redacted communications were solely between GMAC employees and their counsel and any such privilege was not waived, the Notes still do not fall under the attorney client privilege. Rule 501 of the Fed. R. Civ.P. states that the privilege of a person shall be governed by the principles of the common law as they may be interpreted by the courts of the United States…However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a…person…shall be determined in accordance with State law." When privilege is asserted on behalf of a corporation, such as GMAC, federal courts generally follow the rule laid out in Upjohn Co. v. United States which applied the privilege to communications between an attorney for a corporation and any employee or agent of the corporation authorized to speak or give information to the attorney. Upjohn, 449 U.S. 383 (1981). Under this standard, GMAC would have to show that those employees that communicated with their counsel, including the loan servicers, were in a position to speak and provide information on behalf of corporation. See Id.

Maine law, however, follows a "control group" test whereby the privilege is only extended to "one having authority to obtain professional legal services or to act on advice rendered pursuant thereto, on behalf of the client." Maine Rules of Evidence, 502(a)(2); Richard H. Field and Peter L. Murray, Maine Evidence, 216-218 (6th ed. 2007). The determination of

which rule of privilege to apply must be made under the appropriate choice-of-law rule.  In Re Blier, 10 B.R. 993, *6; In re Grand Jury Impaneled January 21, 1975, 541 F.2d 373, 379 (3d Cir. 1976); Lewis v. United States, 517 F.2d 236, 237 (9th Cir. 1975).  Here, the majority of the counterclaims and claims brought by Mr. James in his pleadings fall under Maine statutory or common law ie: Count I: Breach of Contract, Count II: Violation Of The Maine Consumer Credit Code: Title 9-A M.R.S.A. Article 8; Count III: Violation Of Maine Consumer Credit Code 9-A M.R.S.A. §9-305-A; Count IV: Violation of The Maine Unfair Trade Practices Act 5 M.R.S.A. §§206-214; and Count V : Infliction Of Emotional Distress.  The only Federal claims are those federal counterparts to state law: violation of the Federal Truth in Lending Act: 15 U.S.C. §1601 *et seq.* and Real Estate Settlement Procedures Act 12 U.S.C. §2601 e*t seq.*  The Notes may contain information regarding payments made, received, and processed on the account, calculations made on the account, servicing of the account, escrow calculations, payments, and maintenance, communications made to and with Mr. James and the result of those communications, or other information related to GMAC's conduct and actions taken in relation to Mr. James' loan account.  All of this would be relevant in the claims listed above, particularly Counts I, III, IV, and V.

　　　　The privilege should be analyzed under Maine law because the majority of the claims for which the communications could be used as evidence fall under Maine statutory or common law.  See In Re Blier, 10 B.R. 993, *6; In re Grand Jury, 541 F.2d 373, 379; Lewis, 517 F.2d 236, 237.  Under a control group test, GMAC would have to show that the communications were with persons having authority to control or participate in decision making on behalf of the corporation.  See Maine Rules of Evidence, 502(a)(2); Richard H. Field and Peter L. Murray, Maine Evidence, 216-218 (6th ed. 2007).

According to the privilege log, GMAC has not presented sufficient evidence that the "loan servicers" would meet this standard.

In sum, GMAC has not shown that the communications in the Notes from March 24, 2008 forward were all made to a member of the bar of a court or his subordinate nor that the communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing permanently, either (1) an opinion of law, (2) legal services, or (3) assistance in some legal proceeding. The unredacted document, privilege log, and testimony of GMAC's corporate representative indicate otherwise. Further, even if the communications meets these elements, GMAC has not demonstrated that the communications were with persons having authority to control or participate in decision making on behalf of the corporation. For these reasons, the communications are not privileged and should be produced by GMAC.

Likewise, the communications are not attorney work product. Under both the Federal and Maine Rules, work done by an attorney in anticipation of litigation are only discoverable upon a showing of substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. F.R.Civ.P. 26(b)(3); M.R.Civ.P. 26(b)(3); See State of Maine v. United States Department of the Interior, 298 F.3d 60, 66 (1st Cir. 2002). The privilege prevents disclosure of work done by an attorney in anticipation of, or during, litigation. Id. Examples of what may be considered work product include interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible items. See Hickman V. Taylor, 329 U.S. 495, 511 (1947); Tardiff v. County Of Knox, 246 F.R.D. 66, 69 (2007). Communications entered into GMAC's general platform by GMAC's employees

regarding Mr. James account including payments, billings, or telephone calls is not work done by their attorney in preparation of litigation of this action.  See Deposition of GMAC corporate representative, pps. 118-119, at Exhibit 6.  Rather, they are notes entered into the system reflecting activity on Mr. James' account.  That some of the notes related to Mr. James' foreclosure does not create a blanket protection on all notes entered into the system regarding his account, particularly payments made, receipt of payments made, dates of receipt of payments, processing of payments, communications made between GMAC and Mr. James and the result of those communications.  All of this information as well as other relevant data may have been entered into the Notes by employees of GMAC in the course of servicing Mr. James' loan and therefore, would not constitute work product.

     Further, Mr. James has been unable to obtain information regarding these issues to date despite an extensive list of topics and document requests provided to GMAC for their deposition.  See Deposition Notice of GMAC, at Exhibit 2.  Despite specifically noticing the representative to be prepared to answer questions regarding the processing of payments and all communications made with Mr. James, she repeatedly responded "Not sure" or "I don't know."  See generally GMAC Deposition Testimony at Exhibit 6.

For example at pp.s 156:
Q. When did Mr. James first fall into that status of default?
A. I don't know.
Q. What happened when Mr. James first fell into default?
Q. I don't know.

At pp.s 158-159:
Q. When a payment comes in from a borrower, where does it go?
A. I don't know
Q. What happens to a check when is received by GMAC?
A. I don't know

Regarding the cure payment sent in by Mr. James at pp.s 159-160:
Q. On the front of the check it says look up, and that's underlined?

A. Yes.
Q. Can you explain that to me?
A. I don't know
Q. Is that a GMAC stamp put on there?
A. I don't know.

Q. Does GMAC have a coding system that would print such numbers and words on checks?
A. I don't know.

Regarding the GMAC "cure letter" dated February 1, 2008 pp.s 162-163:
Q. Who sent out this letter?
A. I'm not sure.

Q. Does GMAC have any proof that this was mailed out to Mr. James on that date?
A. I don't know.

GMAC has represented and recently stipulated that they have produced all non-privileged documents that are responsive to any discovery request have been produced. A true and accurate copy of the Stipulation of Facts is attached hereto as Exhibit 7. The Notes are the only document that they have listed in their privilege log that has not been produced. Information in the Notes may be the only opportunity for Mr. James to find additional evidence regarding his claims, particularly but not limited to what happened to the cure payment he sent on February 22, 2008, when was he put into default and why, how and when were his payments processed, and what efforts did GMAC make to communicate with Mr. James regarding this and other payments. Alternatively, even if the Court finds that the Notes are attorney work product, Mr. James should have access to them because there is a substantial need for information regarding his claims, particularly the actions taken by GMAC on his account after March 24, 2008, and he has been unable to obtain such information, if it exists, through the discovery process.

WHEREFORE, Mr. James respectfully requests that this Court order GMAC to produce the Notes as outlined in the Motion or, in the alternative, Mr. James would ask the court for an

in-camera inspection of the documents along with appropriate information to decode and understand the Notes in order to make a decision regarding production.

Dated at Biddeford, Maine, this 2nd day of February, 2010.

                MOLLEUR LAW OFFICE

By: */s/ Andrea Bopp Stark*
    Andrea Bopp Stark, Esq.
    Counsel for Defendant/Third Party Plaintiff
    Gordon James
    419 Alfred Street
    Biddeford, ME 04005-3747
    207-283-3777
    207-283-4558 Fax
    andrea@molleurlaw.com