UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION<br>as Trustee for BAFC 2006-1,<br><br>    *Plaintiff*<br><br>v.<br><br>GORDON T. JAMES,<br><br>    *Defendant and Third-<br>    Party Plaintiff,*<br><br>v.<br><br>GMAC MORTGAGE LLC, and<br>QUICKENLOANS INC.,<br><br>    *Third-Party Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | *Civil No. 09-84-P-JHR* |

***MEMORANDUM DECISION ON DEFENDANT'S SECOND MOTION FOR LEAVE TO
AMEND, MOTION TO COMPEL, AND MOTION TO AMEND SCHEDULING ORDER***

      The defendant and third-party plaintiff, Gordon T. James, in this foreclosure action that was removed to this court on March 6, 2009, Docket No. 1, moved on January 26, 2010, for leave to amend his answer, counterclaim, and third-party claim for a second time. Docket No. 63. His first such motion was filed on November 10, 2009, and was granted. Docket Nos. 38 & 64. He also now asks the court to extend the deadline for his designation of expert witnesses from December 16, 2009, to the date of this decision. Docket No. 69. This motion was filed on February 2, 2010. *Id.* Finally, he asks the court to order third-party defendant GMAC Mortgage LLC ("GMAC") to produce certain documents which GMAC contends are protected by privilege. Docket No. 71. I deny all three motions.

1

## I. Second Motion for Leave to Amend

The defendant's second motion for leave to amend his counterclaim and third-party complaint was filed about two and a half months after the deadline for amendment of the pleadings (November 12, 2009) and one day before the deadline for the completion of discovery set by the scheduling order in this case. Scheduling Order (Docket No. 30) at 2. A motion for leave to amend filed after the deadline for such motions set by a scheduling order must establish good cause or excusable neglect. *Kropp v. School Union No. 44*, 238 F.R.D. 329, 330-31 (D. Me. 2006). As is the case here, if it does not contend that its delay was due to excusable neglect,[1] the moving party must show that the deadline could not reasonably be met despite its diligence. Fed. R. Civ. P. 16(b)(4); *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004); *see also Roberge v. Lupo LLC*, 254 F.R.D. 21, 23 (D. Me. 2008).

As a result of his first motion for leave to amend, the defendant has added an affirmative defense to his answer, and claims for breach of contract and intentional or negligent infliction of emotional distress to his third-party complaint. Memorandum Decision on Motion for Leave to Amend (Docket No. 64) at 2, 7. The current motion seeks to add claims of breach of fiduciary duty and negligence to the third-party complaint. Motion for Leave at [3]. The defendant contends that these claims are based on "unanticipated facts [that were] gathered during discovery" which support these "previously unforeseeable claims." *Id*. at [3]-[4].

---

[1] If the defendant meant to argue that his motion should be granted due to his excusable neglect, *see* Defendant's Second Motion for Leave to Amend ("Motion for Leave") (Docket No. 63) at [3], an argument made explicitly only in his reply memorandum, Defendant and Third-Party Plaintiff's Response to Opposition to Second Motion to Amend the Pleadings ("Leave Reply") (Docket No. 75) at 6-7, the defendant has made no showing of excusable neglect, even assuming that standard were applicable here. *See Roberge*, 254 F.R.D. at 23. Merely stating that the proposed amended answer, counterclaim, and third-party claim will not prejudice the third-party defendants, observing that the court has stayed the deadline for the filing of dispositive motions, and suggesting that the third-party defendants' resistance to discovery caused the delay, Leave Reply at 6, does not show excusable neglect by the defendant.

2

## A.  Breach of Fiduciary Duty

Specifically, the defendant contends that he only learned the date on which Quicken transferred his mortgage loan, apparently to GMAC, in Quicken's response to his requests for admissions, served on a date which he does not specify, and that he first learned that Quicken sent notice of a new servicer to the loan insurer at an incorrect address at Quicken's deposition, again on a date not specified in his motion.  *Id*. at [4]-[7].  With respect to GMAC, the only other party against whom the defendant's proposed new breach-of-fiduciary-duty claim is asserted, the defendant contends that he did not learn until Quicken's deposition and/or GMAC's deposition, that GMAC "did not just service the loan on or after July 20, 2005" but also bought it at or near that time, that GMAC testified at its deposition that it "did not inquire about homeowners insurance from the Defendant until October 27, 2005," and that an exhibit from that deposition shows that GMAC thereafter "did not follow their own policy" with respect to homeowner's insurance.  *Id*. at [8]-[9].  This "new" evidence, the defendant asserts, "shed[s] light on GMAC's fiduciary duties owed to the Defendant and the breach of such dut[ies.]"  *Id*. at [10].

Of course, the fact that newly-obtained evidence "sheds light" on a claim does not means that the claim itself could not have been apparent at an earlier time.  GMAC asserts that the defendant has been aware of the necessary facts underlying a claim of breach of fiduciary duty against it "since July 2005[,]" when a notice of assignment of the loan was apparently sent to him, and that his attorney has known these facts "since at least early 2008 when GMAC responded to James' qualified written request."  Plaintiff's and Third Party Defendant GMAC Mortgage, LLC's Opposition to Defendant's Second Motion for Leave to Amend Pleadings (Docket No. 73) at 4-5.  In addition, GMAC contends, the alleged mishandling of the escrow account that forms the basis for the breach-of-fiduciary-duty claim was "raised as an issue by

3

Defendant's attorney in mid-2008." *Id*. at 5. The documents attached to GMAC's opposition and the allegations of the original third-party complaint support GMAC's position.

Under Maine law, the elements of a fiduciary relationship are the actual placing of trust or confidence in fact by one party in another and a great disparity of position and influence between the parties. *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 10, 762 A.2d 44, 46. A breach of this duty occurs when the superior party abuses the confidence or trust placed in it or when it exerts influence to obtain an advantage at the expense of the confiding party. *Ruebsamen v. Maddocks*, 340 A.2d 31, 34-35 (Me. 1975). In his first third-party complaint, the defendant alleged that GMAC was the servicer of the loan at issue, that GMAC (along with the other third-party defendants) breached its duty to make timely payments out of his escrow account, and that, on May 12, 2008, the defendant's attorney delivered the Qualified Written Request to GMAC, and that GMAC miscalculated and misappropriated the funds in his account. Defendant's Answer, Affirmative Defenses, Counterclaims and Third Party Complaint to Plaintiff's First Amended Complaint ("First Third-Party Complaint") (Docket No. 12), Counterclaim[] and Third-Party Complaint (beginning at 5), ¶¶ 6, 64, 67-68, 71(b). The disparity of position and influence between GMAC and the defendant must have been apparent to the defendant from their first contact, as must his placing of trust or confidence in GMAC. The Qualified Written Request, dated May 12, 2008, sets out several specific alleged actions or failures to act that could only have been breaches of any fiduciary duty that GMAC may have had. Letter dated May 12, 2008, from Andrea Bopp Stark to Drummond and Drummond, LLP (Exh. B to Docket No. 73). None of the later "new" evidence on which he relies has any bearing on the existence of the basic elements of his claim.

The defendant has failed to establish good cause for his failure to seek leave to amend the third-party complaint to allege breach of fiduciary duty against GMAC before the deadline established by the court's scheduling order for doing so. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008); *see also, Roberge v. Lupo LLC*, 254 F.R.D. 21, 22-23 (D. Me. 2008); *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 5-6 (1st Cir. 1995).

The same is true, for the same reasons, of the proposed breach-of-fiduciary-duty claim against Quicken. The only difference between the defendant's argument concerning GMAC on this issue and his argument concerning Quicken is an emphasis on the date on which Quicken transferred ownership of the mortgage loan at the center of this case. Motion for Leave at [5]. I assume this argument is meant to suggest that the defendant could not know that he had such a claim against Quicken until he knew that it had in fact owned the loan, and thus perhaps been responsible for servicing it, for some time before GMAC assumed servicing responsibilities. But, as Quicken points out, Third Party Defendant Quicken Loans Inc.'s Opposition to Defendant's Second Motion for Leave to Amend (Docket No. 74) at 5-6, the defendant's initial third-party complaint alleges only that the loan was assigned "soon after the closing," rather than immediately, First Third-Party Complaint ¶ 13, and the defendant certainly did not hesitate to allege in that document that Quicken was liable for failing to make timely payments from his escrow account, *id*. ¶¶ 63, 69, and for miscalculating and misappropriating funds in that account, *id*. ¶ 71(b). The defendant has shown no need to know the exact date of the transfer of the loan in order to assert a breach-of-fiduciary-duty claim against Quicken. The motion must be denied as to Quicken as well as GMAC with respect to this proposed claim.

### B. Negligence

The claim for negligence proposed by the defendant as Count VII of his second amended third-party complaint is based on the same factual allegations as is the proposed Count VI alleging breach of fiduciary duty.  *Compare* Defendant's [Proposed] First Amended Answer, Affirmative Defenses, Counterclaim[] and Third Party Complaint to Plaintiff's First Amended Complaint (filed with Docket No. 63) ¶¶ 115-21 *with id*. ¶¶ 124-31.  The defendant makes the same argument in support of adding this claim to his third-party complaint as he made in support of his proposed breach-of-fiduciary-claim. Motion for Leave at [11].  I reject this argument for the reasons discussed above.

The motion for leave to amend (Docket No. 63) is denied.

### II. Motion to Compel

The defendant seeks an order compelling third-party defendant GMAC Mortgage LLC to produce, in response to his discovery requests, documents that GMAC has withheld and for which it has provided a privilege log.  Defendant/Third-Party Plaintiff's Motion to Compel ("Motion to Compel") (Docket No. 71) at 2-3.  Specifically, he seeks "any and all entries to" a document or documents entitled "Display/History . . . Notes," all of which have been produced for the period from July 29, 2005, when the document begins, to March 24, 2008.  *Id*. at 2.  Redacted entries after that date have been provided.  *Id*.  The defendant asserts that, by his reading of the privilege log, "it does not appear that all [redacted] communications were between an attorney and an employee of GMAC" and that "testimony of GMAC's corporate representative indicates that such communications were used by anyone within GMAC to communicate with anyone else at GMAC," making all of the entries unprivileged.  *Id*. at 3-5.

The single entry in GMAC's privilege log that is at issue includes the following information:

Date:  March 24, 2008 – February 27, 2009

Author/Recipients:  Counsel for Plaintiff and Third Party Defendant GMAC Bank/Loan Servicers [&] In-house legal counsel at Third Party- Defendant GMAC

Subject Matter:  Account History/Servicing Log for Mr. James' loan account from period when parties engaged counsel to assist with loan foreclosure and related issues.

Privilege Claimed:  Privileged Attorney-Client Communications/Attorney Work Product

Exhibit 5 to Docket No. 71.

The plaintiff and GMAC assert that all of the material that has been redacted as reflected in the privilege log is either subject to the attorney-client privilege or protected attorney work product.  Plaintiff's and Third Party Defendant GMAC Mortgage LLC's Opposition to Motion to Compel ("Compel Opposition") (Docket No. 76) at 4-10.  They submit no sworn statement to this effect, however.  Because it was not possible to verify this assertion by referring to the redacted document, a copy of which was provided by the defendant, Exhibit 4 to Docket No. 71, I directed counsel for the plaintiff and GMAC to submit a copy of the unredacted document for *in camera* review.  That document has been provided, and I have reviewed it.

As counsel for the plaintiff and GMAC suggested during our most recent discovery conference, *see* Docket No. 68, the entries on the document at issue use a format, and possibly a code, that makes it difficult to discern exactly what is recorded there.  I believe that I understand the document sufficiently to make the following findings about it, but I order counsel for the plaintiff and GMAC to report to the Clerk's Office immediately if any of my statements about the document are incorrect, so that I may consult with him *in camera* about the information

7

recorded in the document, to the extent necessary, and, in any event, so that I may correct any erroneous statements I may make about the document.

I see nothing in the unredacted document that may reasonably be read to record an exchange of information other than between a lawyer and an employee of GMAC, as stated in the privilege log, or as information other than that generated as attorney work product.[2] The defendant asserts that "[f]rom the description in GMAC's privilege log, it does not appear that all communications were between an attorney and an employee of GMAC. Under Author and Recipients of the log, GMAC indicated that communications may have been among loan servicers themselves and not just between loan servicers and counsel." Motion to Compel at 3. I do not read the log to allow for that possibility, but, in any event, each of the redacted entries appears to me to record an exchange of information between an attorney and an employee or to constitute attorney work product.

The defendant also relies on "testimony of GMAC's corporate representative . . . that such communications were used by anyone within GMAC to communicate with anyone else at GMAC on matters pertaining to Mr. James' loan[,]" making the communications at issue "not just communications between GMAC employees and their counsel." *Id*. at 3-4. The very testimony quoted by the defendant in support of this assertion, however, is testimony about the general GMAC practice of using service logs for all loans; the testimony does not refer to the defendant's loan specifically, and certainly not to the defendant's loan, or any other loan, after it had been referred to counsel for foreclosure or other legal action. Contrary to the defendant's argument, *id*. at 5, the fact that employee-to-employee communications may exist in other loan service logs does not "suggest that any privilege that may have existed [with respect to the

---

[2] The work product doctrine protects documents and other tangible things that are prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b).

service log for the defendant's loan] would have been waived." In the absence of some showing of actual waiver with respect to this document, GMAC having carried its burden to show that waiver did not occur, that argument must fail.

Similarly, the fact that the unredacted portions of the service log show entries "to provide information regarding communications made with Mr. James and other third parties[,]" *id*. at 4, is unremarkable. The unredacted portions do not record privileged information; that is why they are unredacted. I also note that the unredacted document does not include information that would answer any of the allegedly "deficient" responses of GMAC's corporate representative at deposition listed at pages 8-9 of the defendant's motion to compel, and his argument that he has "substantial need" for this information despite its status as work product, Motion to Compel at 9, also fails.

Finally, the parties differ on the question of whether the attorney-client privilege applicable in this case is limited to communications between lawyers and a corporate client's "control group" of employees, as the defendant asserts, *id*. at 5-7, or extends to any employee authorized to speak or give information to the attorney, as the plaintiff and GMAC contend. Compel Opposition at 6-7. Since the employees who entered information into the service log after the loan was referred for legal action were clearly authorized to give information to the lawyers, the second interpretation of the privilege would not render any of the redacted information discoverable. It is not possible to tell from the unredacted document whether all of the employees who entered information into the service log after the referral for legal action were members of GMAC's "control group," so, if that interpretation applied, counsel for GMAC would have to provide further *in camera* information to the court. The plaintiff and GMAC assert that the redacted communications "are, **by definition**, between counsel and a control group

9

of GMAC employees responsible for overseeing, authorizing and assisting with this litigation." *Id.* at 8 (emphasis in original). I am not sure that I see the definition anywhere in the document, but I will accept counsel's representation as an officer of the court for this limited purpose. And, in any event, I conclude that most, if not all, of the redacted material constitutes attorney work product, for which there is no exception based on the titles or job responsibilities of the corporate employees who carry out the attorneys' instructions.

The motion to compel is denied.

### III. Modification of Scheduling Order

The defendant asks the court to modify the scheduling order applicable to this case by extending his deadline for designating an expert witness from December 16, 2009, to an unspecified date, presumably the date of this decision. Defendant's Motion to Modify Scheduling Order ("Expert Motion") (Docket No. 69). He wishes to call his therapist to testify with respect to his claim for intentional or negligent infliction of emotional distress, a claim that was added to his counterclaim and third-party complaint pursuant to first motion for leave to amend, which was filed on November 10, 2009, and granted by my order dated January 26, 2010. Docket Nos. 38 & 64. The defendant contends that this request "is substantially justified in light of [the court's] recent decision on Defendant's Motion to Amend." Expert Motion at 2.

The plaintiff and GMAC contend that November 12, 2009, is the deadline applicable to the defendant's designation of this witness, because he is an "offensive" expert, offered in support of a claim on which the defendant bears the burden of proof. Plaintiff's and Third Party Defendant GMAC Mortgage, LLC's Opposition to Defendant's Motion to Amend Scheduling Order ("Expert Opposition") (Docket No. 72) at 2 & n.1. Because either of the deadlines expired

after the defendant filed his motion for leave to add his emotional distress claim, I need not decide which would have applied in this case.

The defendant knew when he filed his first motion for leave to amend that one of the claims he sought to add was a claim for emotional distress, on which he would carry the burden of proof, and on which he was likely to need expert testimony. He should have designated this witness, his treating psychological professional, at that time,[3] and certainly no later than December 16, 2009, over a month later. The fact that the court had not yet ruled on the motion does not excuse the defendant from complying with these deadlines. Indeed, I made it clear to counsel during more than one of the frequent discovery dispute conferences that have been held in this case, after the defendant's first motion to amend had been filed, that I expected discovery to proceed as if the motion to amend had been granted, in order to avoid delay in reaching trial of this case.

The burden is on the party that has failed to comply with discovery deadlines to establish that his failure is harmless or substantially justified. *Griffith v. Eastern Maine Med. Ctr.*, 599 F.Supp.2d 59, 65 & n.4 (D. Me. 2009). This court has also indicated that it will allow a late designation of an expert witness if the party seeking leave to do so demonstrates excusable neglect. *Fortin v. Town of Wells*, 2009 U.S.Dist.LEXIS 95670 (D. Me. Oct. 13, 2009), at *9. For the reasons already discussed, the defendant has not established, and cannot establish, excusable neglect or substantial justification for his delay in seeking to designate his treating professional as an expert witness. With respect to the question whether the late designation would be harmless, the defendant offers "to allow the parties to perform a deposition of [the treating professional] before the trial date currently set for June 2010." Expert Motion at 3.

---

[3] The defendant did designate an expert witness, Kevin Byers, on November 12, 2009. Defendant's Motion to Extend Time to File Expert Written Report (Docket No. 39) at 2.

However, he has not provided the court or opposing counsel with any of the information concerning this proposed witness, as is required by Fed. R. Civ. P. 26(a)(2), and this person's treatment records were not provided in response to discovery requests and my order of January 27, 2010, Docket No. 68, until February 3, 2010.  Expert Opposition at 7.

Confining opposing counsel to a deposition of the newly-designated expert before trial would not render the late designation harmless.  It would deprive the opposing parties of the opportunities that would have been available had the designation been timely made to develop opposition to the expert's anticipated trial testimony, including, possibly, locating, preparing, and designating opposing expert witnesses, or seeking an independent psychological evaluation.  Allowing the defendant's proposed late designation, particularly in light of the lack of required information concerning that expert's expected testimony, qualifications, experience, and treatment history with the defendant, would certainly cause harm to the plaintiff and GMAC, which could only be remedied by a fairly lengthy extension of the discovery deadline, which has now passed.

The defendant's motion to amend the scheduling order to allow him to call an additional expert witness is denied.

### IV.  Conclusion

For the foregoing reasons, the defendant's motions for leave to amend, to compel, and to amend the scheduling order (Docket Nos. 63, 69 & 71) are **DENIED.**

In accordance with the terms of my Report of Hearing and Order dated January 27, 2010 (Docket No. 68), the plaintiff and third-party defendants shall file answers to the defendant's first amended answer, counterclaim, and third-party complaint no later than 7 days from the date of

this opinion, that is April 12, 2010. The deadline for filing dispositive motions is set at April 26, 2010.

Dated this 5th day of April, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge