UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BAFC 2006-1 TRUST, | ) ) ) | **Docket No. 09-cv-84** |
| Plaintiff, | ) ) | **PLAINTIFF'S AND THIRD PARTY DEFENDANT GMAC MORTGAGE,** |
| v. | ) ) ) | **LLC'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P.** |
| GORDON T. JAMES, et al. | ) ) | **56 AND INCORPORATED MEMORANDUM OF LAW** |
| Defendant. | ) | |

## MOTION

NOW COME Plaintiff/Counterclaim Defendant U.S. Bank, N.A., Trustee ("Plaintiff" or "US Bank"), and Third-Party Defendant GMAC Mortgage, LLC ("GMAC"), by and through their duly authorized attorneys, Drummond & Drummond, LLP, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby file this Motion for Summary Judgment seeking judgment in their favor on: (a) Plaintiff's Claims against Gordon T. James ("Defendant"); (b) Defendant's Counterclaims against Plaintiff; and (c) Defendant's Third Party Claims against GMAC. Plaintiff's and GMAC's arguments are set forth fully in the below Memorandum of Law and are supported by the Statement of Material Facts, filed concurrently herewith.

## MEMORANDUM

### Introduction

The factual background of this case has been well briefed in prior pleadings. *See, e.g.,* Counterclaim Defendant and Third Party Defendant's Motion to Dismiss Defendant's Counterclaim[], Docket No. 15. Moreover, as this Court knows from the litany of discovery conferences and pre-trial motions, discovery has been robust and, as far as Defendant would permit, comprehensive. This case arose as an action to foreclose a mortgage ("Mortgage") given by Defendant to secure a promissory note ("Note") in favor of Plaintiff's predecessor-in-interest,

Quicken Loans, Inc. ("Quicken").  Memorandum Decision on Motion to Strike and Recommended Decision on Motion to Dismiss Counterclaims, Docket No. 27 at 2.  Defendant executed the Note and Mortgage on June 30, 2005.  Statement of Material Facts ¶¶ 1-2 (hereinafter "SOMF ¶ ____").  Subsequent to the date of the Note, the Note and Mortgage were assigned to US Bank.  SOMF ¶ 3-5.  GMAC currently serves as the servicer of the Note.  SOMF ¶ 62.  GMAC's role as servicer is to perform certain administrative, accounting and correspondence functions on behalf of the holder of the Note and Mortgage.  *See* 12 U.S.C. § 2605(i) (defining servicer); SOMF ¶ 62.  US Bank currently holds the Note and Mortgage and has at all relevant times during this litigation and the default that preceded it.  SOMF ¶¶ 4 and 6.

Several times over the time period between January 2006 and November 2007, Defendant made incomplete or late payments towards the debt memorialized in the Note.  SOMF ¶¶ 22, 24; *See* SOMF Ex. C.  In December 2007, Defendant completely ceased making payments owed under the Note and consequently defaulted on his obligations under the Note and Mortgage.  SOMF ¶¶ 13, 22-24.  In accordance with its servicing responsibilities, GMAC provided notice to Defendant of this default on February 1, 2008.  SOMF ¶ 8.  Defendant failed to timely cure the default.  *Id*.  US Bank then brought a Complaint for foreclosure of the Mortgage.  Docket No. 9.

Defendant's Answer to the Complaint included a number of counterclaims and third-party claims.  Docket No. 12.  On August 26, 2009, the Court entered a scheduling order that set the deadline for completion of discovery at January 27, 2010, and the deadline for pre-trial motions at February 17, 2010.  Docket No. 30.  On November 11, 2009, Defendant sought leave to amend his counterclaims and third-party complaint and the Court granted that request on January 26, 2010.  Docket No. 64.  On April 5, 2010, the Court entered an order denying

Defendant's request to further amend his counterclaims and third-party claims.  Docket No. 78.

In the same order the Court set April 26, 2010, as the new deadline for dispositive motions.  As

of the filing of this motion, discovery is complete, the discovery deadline has passed and all

claims are ready for disposition.  US Bank and GMAC seek judgment in their favor on (a) US

Bank's claims; (b) Defendant's Counterclaims; (c) Defendant's Third-Party Claims (the latter

two of which will be collectively referred to as "Counterclaims").

### *Applicable Consumer Mortgage Laws*

Defendant's Counterclaims allege violations of, *inter alia*, the Federal Truth in Lending

Act ("TILA"), the Maine Truth in Lending Act ("MeTILA"), the Federal Real Estate Settlement

Procedures Act ("RESPA") and those portions of the Maine Consumer Credit Code ("MCCC")

that deal with escrow account maintenance. Docket No. 66.  TILA and RESPA both require

consumer mortgage lenders to provide certain notices and disclosures prior to the time a

borrower becomes contractually obligated under the loan documents.  *See* 12 U.S.C. § 2604; 15

U.S.C. § 1638(b).  Both Acts are highly detailed regulatory structures that set forth penalties for

violations.  Federal agencies have provided extensive regulations, detailed model forms and in-

depth interpretive notes to help lenders comply with the requirements of TILA and RESPA.  *See*,

*e.g.*, 12 C.F.R. Part 226 ("Reg Z") (implementing TILA); 24 C.F.R. Part 3500 ("Reg X")

(implementing RESPA).  Under the federal statutes, a consumer mortgage lender is *only liable to

a consumer* if the lender has failed to make a *good faith effort* to comply with the federal

statutes.  *See* 15 U.S.C. § 1640(a), (f); 12 U.S.C. §§ 2605(f), 2617(b).  Additionally, holders of

consumer mortgage loans *are not liable for TILA* or *MeTILA* violations if the holder was not the

original lender and the violations are not apparent on the face of the loan documents.  15 U.S.C.

§ 1641; 9-A M.R.S.A. §§ 8-209(5).  These two liability-limiting provisions were added to TILA

in 1995 in order to minimize frivolous claims based on a "hyper-technical" application of TILA that threatened the entire consumer mortgage lending business. *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, n.6 (1st Cir. 2007); *see also Mckenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007). TILA also provides that minor errors in financial disclosures will not violate the Act if they are within the tolerance set by regulation.[1]

Maine has adopted its own versions of TILA and RESPA as part of the MCCC. *See* 9-A M.R.S.A. §§ 8-101 through 8-404 (2006); §§ 9-305-A, 9-311-A (2006).[2] These Maine statutes require the same notices, disclosures and actions as those required by the federal laws (and no more) and compliance with TILA and RESPA also assures compliance with the MCCC and Maine TILA. *See, e.g.*, 9-A M.R.S.A. § 8-202 (2006); *see also* Me. Dep't of Prof. and Fin. Reg. 02 030 CMR ch. 240 (adopting most portions of Reg. Z including appendices establishing model forms)[3]. The state statutes also reveal that a lender is *not liable to a consumer* for a violation that was unintentional and the result of a bona fide error, including clerical mistakes. 9-A M.R.S.A. § 5-208(3) (2006). These statutes are fatal to the majority of Defendant's claims, and each claim that is based on those same statutes.

### Standard of Review

A party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] 12 C.F.R. § 226.18(d)(1) (no violation if the disclosed finance charge *and other disclosures affected by the disclosed finance charge* (including the amount financed and the annual percentage rate) is understated by no more than $100); 15 U.S.C. 1606(c) and 12 C.F.R. § 226.22 (no violation if the disclosed annual percentage rate is within .125% of the actual annual percentage rate).

[2] The MCCC was significantly amended in late 2007. The proper version of the MCCC for this case is the version that was in effect at the time of the transaction at issue and is shown in the 2006 edition of the Maine Revised Statutes Annotated and referenced accurately herein.

[3] Ch. 240 is on the internet at http://www.maine.gov/sos/cec/rules/02/030/030c240.doc.

> [a]n issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A "material fact" is one that has the potential to affect the outcome of the suit under the applicable law. The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must produce specific facts, in suitable evidentiary form, to establish the presence of a trial worthy issue. As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party.

*Sandler v. Calcagni*, 565 F. Supp. 2d 184, 191-192 (D. Me. 2008) (internal citations and quotations omitted); *see also McCarthy v. Northwest Airlines*, 56 F.3d 313, 314-15 (1st Cir. 1995). "[T]he trial court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor, ***but paying no heed to conclusory allegations, improbable inferences, [or] unsupported speculation.***" *McCarthy* 56 F.3d at 315 (internal citations and quotes omitted) (emphasis added).

### *Argument*

**I.   Plaintiff is entitled to foreclose Defendant's mortgage because Defendant is in default of his obligations under the note and mortgage (Complaint Count I).**

Plaintiff is entitled to foreclose Defendant's Mortgage because Defendant did not keep all of his promises contained in the Mortgage, thereby breaching the Mortgage contract, *and* he did not correct the breach in a timely manner after receiving notice of the broken promise. SOMF ¶ 18; 14 M.R.S.A. §6322 (empowering Court to issue judgment of foreclosure). "To prevail on foreclosure on summary judgment, Plaintiff must provide undisputed evidence of: 1. A breach of condition in the plaintiff's mortgage. 2. The amount due on the mortgage, including reasonable attorney's fees and court costs. 3. The order of priority and those amounts, if any, that may be due to other parties of interest." *Johnson v. McNeil*, 2002 ME 99, ¶17 (Me. 2002).

Defendant admits he failed to make his monthly payments on time, a fact that cannot seriously be disputed.  SOMF ¶¶ 13, 14, 22-24.  GMAC, on behalf of Plaintiff, mailed Defendant a notice of default letter on February 1, 2008, informing Defendant that his serious delinquency in payments constituted a breach of the Mortgage and if the breach were not cured within thirty days, the lender would start a foreclosure action.  SOMF ¶¶ 15-16.  The letter required cure by March 3, 2008.  SOMF ¶ 60.  Although Defendant claims he made some effort to cure the breach, a payment that could be credited to his account was not received until many days after the cure deadline.  SOMF ¶¶ 35, 68.  The cure check sent to GMAC by Biddeford Savings Bank on or about February 22, 2008, did not have information on it that would allow GMAC to credit it to Defendant's account.[4]  SOMF ¶¶ 28-31.  Specifically, it did not contain Defendant's name or account number and thus GMAC could not determine to which of its thousands of Maine accounts the check should be applied.  *Id*.  When the check was sent to GMAC a second time with this identifying information the check was received after the thirty-day cure deadline.[5] SOMF ¶ 33-35.  Thus, even if Defendant attempted to cure, it was too late and of no legal affect. SOMF ¶ 36; *see also* Stephan Aff. Ex. B at ¶ 22.  No admissible evidence controverts the facts supporting this conclusion.

Beyond showing an uncured breach, Plaintiff must also show the total amount due on the mortgage and the priority of any other liens.  14 M.R.S.A. §6322; *Johnson*, 2002 ME at P17.  The total amount due on the mortgage is $321,724.95 together with any additional interest, fees and costs incurred between now and the time of judgment.  SOMF ¶ 20.  Party in interest Maine

---

[4] As this Court is aware, US Bank issued a subpoena to Biddeford Savings Bank for its records related to Defendant principally because Defendant refused to voluntarily produce the same despite leaning on claims of financial distress.  Biddeford Savings Bank has yet to produce documents in response.  US Bank and GMAC therefore expressly reserve the right to supplement the evidence in support of their Motion for Summary Judgment with any information provided in their Reply Brief.

[5] The check was returned to issuing bank on March 4, 2008, thus it necessarily could not have been received with property identifying information by GMAC before the March 3rd cure deadline.  SOMF ¶ 32.

Revenue Services has discharged their lien on the property and thus Plaintiff is the sole lienholder on Defendant's property.  SOMF ¶ 61.  Because Defendant breached his obligations in the Mortgage and Plaintiff has shown the total amount due the priority of liens, Plaintiff has met all the requirements that entitle it to summary judgment on its claim for foreclosure of the Mortgage securing the Note, and thus is entitled to the same.  14 M.R.S.A. §6322; Fed. R. Civ. P. 56; *Johnson*, 2002 ME at P17.  As such, this Court should grant summary judgment in Plaintiff's favor on its foreclosure claim.

## II.   Judgment must be granted in favor of Plaintiff and GMAC on Defendant's breach of contract claim (Counterclaim, Count I).

 A.   *GMAC is entitled to summary judgment on Defendant's breach of contract claim because GMAC is not a party to the mortgage contract between Plaintiff and Defendant.*

Defendant's first counterclaim is a breach of contract action against Plaintiff and GMAC. Docket No. 66.  This claim is based on the allegation that Plaintiff, the mortgagee by assignment of the Mortgage, pursued foreclosure of the Mortgage after Defendant attempted but failed to correct his default before the cure deadline.  *Id* at 14-15.  Even if Defendant could prove his cure was proper and before the deadline (which he cannot, see *supra*), summary judgment should be granted in favor of GMAC on this claim because GMAC is not a party to the mortgage contract. SOMF ¶ 90.  "One who is not a party to a contract is not personally liable for breach of any such contract."  *Anton v. City of Biddeford*, 1998 Me. Super. LEXIS 285, 7-8 (Me. Super. Ct. Nov. 23, 1998).  Furthermore, any argument that GMAC was Plaintiff's agent for contract liability purposes fails.  *K&S Servs. v. Schulz Elec. Group of Cos.*, 670 F. Supp. 2d 91, 94 (D. Me. 2009) ("generally, an agent is not personally liable for contracts entered into on behalf of a disclosed principal.").  Only when a principal is undisclosed may an agent be held personally liable on the contract.  *Id*.  In this case Quicken, the original lender, and Plaintiff, the assignee lender, were clearly disclosed to Defendant.  *See* SOMF ¶ 1.  Thus, GMAC cannot be found liable under any

contract theory.  *K&S Servs.* 670 F. Supp. 2d at 94.  For these reasons, summary judgment

should be granted in favor of GMAC on Count I.

   *B.   Plaintiff and GMAC are entitled to summary judgment on Defendant's Breach of Contract Claim because Defendant's cure payment was improper and untimely.*

      Defendant's breach of contract claim hinges upon finding that his attempt to cure was

done properly.  Docket No. 66.  This puts the cart before the horse.  If cure was tardy, there

simply was no legally recognized cure and the acceleration of debt and foreclosure action were

permitted by the Mortgage contract between US Bank and Defendant.  SOMF ¶¶ 21 and 36; *see*

*also* Stephan Aff. Ex. B at ¶ 22.  Defendant bears the burden of proving that his cure was proper

and in the context of this motion must present "sufficient evidence to generate a trialworthy

issue."  *Sandler* 565 F. Supp. 2d at 192.  This requires Defendant to show that GMAC, as

servicer for US Bank, received his cure payment before the cure deadline and *the payment was*

*made in such a manner that it could be credited to his account.  Id.*  The admissible evidence

fails on this last element.

      On February 1, 2008, GMAC, as servicer for US Bank, mailed Defendant the Notice of

default.  SOMF ¶¶ 15-16.  The Notice stated, "[i]f funds tendered are not honored for any reason,

the default will not be cured."  SOMF ¶ 36.  The thirty-day cure deadline established by the

Mortgage contract and the Notice was March 3, 2008.  SOMF ¶¶ 15, 60.  If any proper payment

were received by GMAC before that deadline, a record of it would have existed in the extensive

and detailed account records maintained by GMAC.  *See* SOMF Ex. C.  No such entry exists.  *Id.*

To the contrary, the first entry relating to any attempt to cure is dated February 16, 2008, and

records Defendant stating he thought his property manager (not he) was making the payment.  *Id*;

*see also* SOMF ¶ 24.  Even before the deadline, Defendant is disclaiming responsibility for

making his mortgage payment.  *Id.*  Moreover, this evidence does not cross the finish line.  There

has been no evidence anywhere in the record, or produced during discovery, that Defendant's property manager attempted to make a payment in February or March 2008; in fact, Defendant admitted that he told his property manager to stop making the mortgage payments for the subject loan. SOMF ¶ 24. Much like counsel attempting to withdraw from a case, Defendant's abdication of responsibility for his cure payment is incomplete for want of a releasee. *See* SOMF Ex. C at page 245 (reminding Defendant it was his responsibility to make payments). To the contrary, the only entry that references Defendant's attempted payment is dated March 12, 2008, nine days after the cure deadline. SOMF ¶ 39.

GMAC's records indicate that GMAC received a cashier's check (not a personal check or one drawn on any individual account and thus not self-identifying) at GMAC's payment processing department on or about February 28, 2008. SOMF ¶¶ 26 and 28, Ex. D. However, the check could not be credited to Defendant's account because it lacked any identifying information such as borrower name or account number. SOMF ¶¶ 28 and 29. As a result, the cashier's check was rejected and returned to the issuing bank, Biddeford Savings Bank. SOMF ¶ 32. Nearly three weeks later, after the deadline for cure established by the Notice, the cashier's check was returned to GMAC by Biddeford Savings Bank with Defendant's name and account number added to the face of the check. SOMF ¶ 33; s*ee also* SOMF Ex. D. By the date of second receipt, the cashier's check was no longer sufficient to cover the amount due on Defendant's account and GMAC thus had to reject it. SOMF ¶¶ 34, 35 and 37.

The Mortgage provides the right to reject any payment that is insufficient. SOMF ¶ 40. These facts are the only reliable facts that address the actual receipt of Defendant's check by GMAC and no documentary or testimonial evidence controverts them. Defendant admits he did not personally mail the cure check or see to its mailing and was contacted by the bank several

days later because the check had been returned.  SOMF ¶ 27.  Thus, his testimony offers no

credible evidence on this issue other than to verify that the check was returned due to non-

compliance.  Because the only admissible evidence regarding Defendant's attempted cure shows

his cure was improper, tardy or both, Plaintiff and GMAC are entitled to summary judgment on

Defendant's Counterclaim, Count I.  SOMF ¶¶ 34-35; Fed. R. Civ. P. 56(c).

### III. Defendant's TILA and Maine TILA claims fail because the TIL statement provided to Defendant complied with the requirements of law (Counterclaim, Count II).

   A.   *Plaintiff and GMAC are entitled to judgment on Defendant's TILA and Maine TILA claims because the documents provided to Defendant clearly and conspicuously disclosed all the information required by law.*

   Defendant's second count alleges violations of TILA and Maine TILA.  Docket No. 66.

The central claim of Count II is that the Truth in Lending disclosure statement (the "TIL")

provided to Defendant at the closing was unclear because it did not provide notice that private

mortgage insurance ("PMI") was required for Defendant's Mortgage loan.[6]  Docket No. 66.

However, contrary to Defendant's arguments, there is absolutely no requirement that the TIL

provide notice of the requirement of PMI.  A TIL is fully compliant with TILA and Maine TILA

if it discloses the *financial* aspects of a mortgage loan.  15 U.S.C. § 1638(a).  Because

Defendant's TIL disclosed all the required financial aspects of his Mortgage loan, Plaintiff and

GMAC are entitled to summary judgment on Count II of Defendant's counterclaims.  *Id*; SOMF

¶ 42.

   i.   <u>The Truth in Lending Statement provided to Defendant was sufficient because it disclosed the required information and included the cost of PMI.</u>

---

[6] Defendant's Count II also alleges liability based on a failure to deliver two notices of the right to cancel, a failure to accurately calculate the figures on the TIL and the failure to comply with Defendant's rescission demand.  Docket No. 66.  As set forth in Sections III.B and III.C, Plaintiff and GMAC are entitled to judgment on the theory regarding the notices per Defendant's stipulation and the theory regarding incorrect calculations.  *See infra*.  The rescission claim fails if no violations are found.  15 U.S.C. § 1635(a) (providing a three day right of rescission from the latter of the closing date or the date TILA compliant disclosures are provided to the borrower).

TILA requires the APR and finance charge for a loan be disclosed "clearly and conspicuously" on the TIL.  15 U.S.C. §§ 1632(a), 1638(a), (b) (establishing disclosure requirements for closed-end consumer loans); *see* 12 C.F.R. § 226.2(10), (20) (defining closed-end credit to be consumer credit other than open-end credit).  "TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice."  *Santos-Rodriguez*, 485 F.3d at 17.  "Any creditor who uses plain and legally sufficient language ought to be held harmless."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 29 (1st Cir. 2006).  The determination of whether a disclosure was clear is a matter for the Court and ***is not based on a borrower's subjective understanding of the TIL***.  *Santos-Rodriguez* 485 F.3d at 19; *Palmer*, 465 F.3d 24 at 28.

TILA requires disclosure of the following financial aspects of a consumer mortgage loan: (1) the name of the creditor, (2) the amount financed, (3) the total finance charge, (4) the annual percentage rate, (5) the total of all payments shown on the TIL and (6) the number and amount of payments required to pay the total of payments.  15 U.S.C. § 1638(a).  These amounts were clearly and conspicuously disclosed at the top of the form provided to Defendant:

- <u>Creditor</u>: Quicken Loans, Inc. (required by 15 U.S.C. § 1638(a)(1));
- <u>Amount financed</u>: $200,161.00 (required by 15 U.S.C. § 1638(a)(2));
- <u>Finance Charge</u>: $266,921.30 (required by 15 U.S.C. § 1638(a)(3));
- <u>Annual Percentage Rate</u>: 6.113% (required by 15 U.S.C. § 1638(a)(4));
- <u>Total of payments</u>: $467,082.30 (required by 15 U.S.C. § 1638(a)(5));
- <u>Number and amount of payments to repay the total of payments</u>: 120 payments at $1,029.83 per month, 51 payments at $1,458.43, 189 payments at $1,423.93 (required by 15 U.S.C. § 1638(a)(6)).

SOMF ¶ 42.  Additionally, it is clear that the payments on the TIL did, in fact, include the cost of required PMI.[7]  SOMF ¶ 44.  The TIL provided to Defendant met every requirement of TILA and Maine TILA and closely mirrored the model forms prescribed by the Federal and Maine

---

[7] "[T]he 120 payments of 1,029.83 is the interest-only portion of the payment, along with the PMI insurance that's required."  SOMF ¶ 44.  "[The second 51 payments] would be the . . . principal and interest payment, along with the reduced PMI schedule."  *Id.*

regulators.  *Compare* SOMF ¶ 44, Ex. E *with* SOMF ¶ 91, Ex. Z2.[8]  "Good faith compliance with

[the Federal Reserve Board's] commentary affords protection from liability under [the TILA]."

*Palmer*, 465 F.3d at 29 (*quoting* 12 C.F.R. § 226 Supp. I, Intro. para. 1) (modifications in

original).  Although Defendant attempts to manufacture additional disclosure requirements, such

as the requirement that the TIL disclose the *requirement* of PMI, no other disclosures were

legally required.  15 U.S.C. § 1638(a).  "If more were needed . . . [it] might contravene the goals

of the TILA."  *Palmer*, 465 F.3d at 29.  As a result, summary judgment must be granted in favor

of Plaintiff and GMAC on Defendant's Count II.

   ii.   <u>The TIL did not need to include a statement that the Mortgage loan required PMI.</u>

        TILA and Maine TILA do not mandate that the requirement of PMI be separately noted

on the TIL.  *Compare* 15 U.S.C. § 1638(a)(2)(A) (indicating that charges required by lender,

such as PMI, must be included in the disclosed amount financed but the calculation need not be

disclosed) *with* 15 U.S.C. § 1638(a)(3) (indicating the finance charge need not be itemized).

That simply is not the purpose of the TIL.  Disclosure of PMI requirements is governed by a

separate set of laws and regulations.  12 U.S.C. § 4903 (establishing PMI disclosure

requirements).  TILA does require that the amounts charged for PMI be included in the payment

amounts disclosed on the TIL.  *See* Staff Commentary to 12 C.F.R. § 226.18(g), comment #5,

available at http://www.fdic.gov/regulations/laws/rules/6500-2320.html.  Quicken's designee

testified that Defendant's TIL complied with this requirement.  SOMF ¶ 44.  "[T]he 120

payments of 1,029.83 is the interest-only portion of the payment, along with the PMI insurance

that's required."  *Id*.  "[The second 51 payments] would be the . . . principal and interest

---

[8] The forms were adopted by the Federal Reserve Board, which is the Federal agency tasked with implementing TILA.  The forms are available in Appendix H to Reg. Z, 12 C.F.R. Part 226.  Forms H-2, loan model form, and H-15, graduated payment mortgage sample form, are available at: http://www.fdic.gov/regulations/laws/rules/6500-1950.html#6500appendixhtopart226.  Maine adopted these model forms when it adopted most of Reg. Z.  Me. Dep't of Prof. and Fin. Reg. 02 030 CMR ch. 240.

payment, along with the reduced PMI schedule." *Id*.  Absolutely no testimonial or documentary evidence suggests that the *cost* of PMI was *not included* in Defendant's TIL.  In fact, the evidence shows information quiet to the contrary.  Based on these facts, Plaintiff and GMAC are entitled to summary judgment on this portion of Defendant's Count II.

iii.   Additional documents cited by Defendant do not create an unclear TIL.

Defendant's Count II suggests that other documents provided at closing caused the TIL to be *unclear* because they included numbers that were different from the numbers shown on the TIL.  Docket No. 66.  This simply has no legal basis and the only thing that can rightly be called unclear is Defendant's claim for relief.  It is the self-serving and misleading characterizations of the documents that are opaque; the documents, on the other hand, are clear and compliant. Although it's true that the documents each disclose different figures, each cited document served a different purpose and none of them diminish the fact that the TIL was legally adequate.  15 U.S.C. § 1638.  Each appropriately states amounts for its own purpose.

The payment amounts disclosed on the TIL differed from the payment amounts shown in the Note because the Note *only* recites the payment required to repay the loan amount.  SOMF ¶ 45.  The Good Faith Estimate did not include a payment for PMI because none was charged at the closing.  24 C.F.R. § 3500.2 (defining "good faith estimate" as an estimate of those charges to be incurred *at closing*); 24 C.F.R. § 3500.7 (explaining requirement of good faith estimate); SOMF ¶ 46.  The monthly payment letter indicated a payment amount different from the TIL simply because it included escrows for taxes and property insurance.  SOMF ¶ 47.  These escrows ***must not*** be included in the finance charge or disclosed on the TIL.  15 U.S.C. § 1605(e).  Because each different document was independently necessary and correct for its own purpose, Defendant cannot reasonably argue that they made his proper TIL no longer compliant with the requirements of TILA and Maine TILA.  In fact, if the TIL had included anything else it

might not comply with cited statutes. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (U.S. 1980) ("[m]eaningful disclosure does not mean more disclosure"); *Palmer*, 465 F.3d at 29 ("[i]f more were needed . . . [it] might contravene the goals of the TILA."). As a result, the documents cited by Defendant do not create a genuine issue of material fact about the clarity of the TIL provide to Defendant, and this Court should enter judgment in favor of US Bank and GMAC on Count II.

   iv.   <u>Cases cited previously by Defendant are inapplicable to this situation.</u>

      In earlier briefing, Defendant cited several cases that suggest the failure to note the requirement of PMI on the TIL makes the TIL unclear and thus non-compliant with TILA. Docket No. 22. It is anticipated that Defendant will be similarly misguided here. A closer reading of each cited case reveals facts absent here that justify those outcomes as distinguished from an appropriate summary judgment here. In *Altamirano v. Copiague Funding Corp.*, an estimated TIL contained a check box to indicate whether PMI was required and the box *was not checked* even though a note on the estimated TIL stated that the estimated payment *included* mortgage insurance. The estimated TIL also conflicted with the final TIL. *Altamirano v. Copiague Funding Corp.*, 2008 U.S. Dist. Lexis 62762, 4; 10-11; 16 (D. Conn. 2008). These facts contrast with those of the current case in which the TIL provided to James did not have a check box regarding the requirement of PMI and there was not an estimated TIL. SOMF Ex. E. Thus, this case is inapposite because, unlike the TIL in *Altamirano*, James' TIL was not inherently inconsistent (i.e., here, there is no check box indicating a lack of PMI when PMI was actually included) and there are not multiple, inconsistent TILs. *Id.* Because of the absence of inconsistency here, Defendant could not have been confused in any actionable way. As a result, *Altamirano* can be easily ignored.

In another case cited by Defendant, *In re Madel*, the *good faith estimate* included PMI in the amount of $59 per month.  2004 Bankr. Lexis 2367, 4-5 (Bankr. E.D. Wis. 2004).  On the date of the closing, the actual monthly PMI charge was set at $392 and this figure was charged at closing.  *Id* at 4.  No explanation or notice of the increase in cost was provided.  *Id.*  Like *Altamirano*, the final TIL statement also had a check box to indicate whether PMI was required *but it was not checked*.  *Id.*  Based on the higher final cost of PMI and the unchecked PMI box in the final TIL, the court would not dismiss the claim of an unclear TIL before discovery occurred. *Id* at 25.  In the case at hand there was no estimated TIL that substantially conflicted with the final TIL and the good faith estimate was an accurate estimate of *settlement* charges.  SOMF ¶ 46.  The TIL provided to Defendant conformed to the requirements of TILA and MeTILA and did not include an unchecked box indicating PMI was not required.  SOMF ¶ 42 and Ex. E; *see infra*, section III.A.i.

Other cases previously cited by Defendant are also easily differentiated from the case at hand because each case found that ***a failure to include the cost of PMI in the finance charge*** disclosed on the TIL Statement was a violation of TILA.  *See In re Smith*, 92 B.R. 127, 132 (Bankr. E.D. Pa. 1988) (*citing In re Lindsey*, Bankr. No. 87-03429S (Bankr. E.D. Pa. May 24, 1988)); *In re Schultz*, 58 B.R. 945, 948-49 (Bankr. E.D. Pa. 1986) ("[a]pplying this authority to the case before us, it is clear that [the lender] did not include the cost of the mortgage insurance in calculating the 'finance charge.'").

Defendant's argument does not follow these cases.  Rather, he claims that failure to ***specifically disclose the requirement*** of PMI on the TIL Statement is a violation of TILA and Maine TILA, which is different from the conclusion that failure to include ***the cost of PMI*** in the finance charge is a violation.  Docket No. 66 at 16-17.  Another case cited by Defendant, *In re*

*Ralls*, is different from the current case because the *Ralls* debtor signed two promissory notes with different payment terms which were not properly disclosed on the TIL Statement. *In re Ralls*, 230 B.R. 508, 515-516 (Bankr. E.D. Pa. 1999).  One promissory note disclosed a finance charge different from that shown on the TIL Statement and all the loan documents were different from the terms of the loan that were mutually agreed upon by the parties. *Id*.  In the current case there is only one promissory note (SOMF ¶ 1) and it does not disclose a finance charge different from that shown on Defendant's TIL Statement and the loan documents reflect the terms agreed upon by the parties. *See infra* section III.A.iii.  As a result of these differences, the cases cited previously by Defendant do not support the conclusion that his TIL was unclear and Plaintiff and GMAC are entitled to summary judgment on Defendant's Count II because the TIL conformed to the requirement of TILA and Maine TILA. *See infra* Section III.A.i.

B.   *Plaintiff and GMAC are entitled to summary judgment on Defendant's TILA and Maine TILA claims that are based on a failure to provide two copies of the Notice of Right to Cancel.*

Defendant's second basis for relief under TILA and Maine TILA is that Quicken failed to provide Defendant with two copies of the required Notice of Right to Cancel at the loan closing. Plaintiff and GMAC are entitled to summary judgment on this portion of Count II because Defendant has stipulated to the removal of these allegations from his counterclaims and third-party complaint.  SOMF ¶ 48.  Furthermore, Plaintiff and GMAC are entitled to summary judgment on this portion of Count II because Defendant produced two unsigned copies of the Notice of Right to Cancel dated for the closing date and the copies were produced from the materials provided to Defendant at the closing for the loan. SOMF ¶ 49.  Together with the signed copy of the Notice of Right to Cancel produced by Plaintiff, the evidence that Defendant did receive at least two copies of the Notice of Right to Cancel at the closing as required by TILA and Maine TILA is uncontroverted.  SOMF ¶¶ 49-50; 15 U.S.C. § 1635(a); 12 C.F.R. §

226.23(b); 9-A M.R.S.A. § 8-204(1).  For these reasons Plaintiff and GMAC are entitled to Summary Judgment on this portion of Count II.

C. *Plaintiff and GMAC are entitled to summary judgment on Defendant's claim alleging that the figures on the TIL were incorrect.*

Defendant's Count II also throws in a claim that the payment schedule and the total of payments shown on the TIL are incorrect because the TIL indicates 171 payments would include PMI rather than 172 payments with PMI as shown by an amortization schedule provided by Quicken.  SOMF ¶¶ 42, 51; *but see* SOMF ¶ 52.  Although some evidence suggests that only 171 payments would have included PMI, a final determination of this fact is not material to resolution of Defendant's argument in this regard because Defendant paid no more than 28 payments and thus suffered no harm (i.e., he never made it even within ten years of the disputed payments).  SOMF ¶¶ 51-53.

Additionally, the TILA does not require perfect disclosure.  *Santos-Rodriguez*, 485 F.3d at 17.  A TIL is accurate if the disclosed finance charge and other disclosures affected by it are understated by no more than $100.00.  12 C.F.R. § 226.18(d)(1).  Assuming, for argument purposes only, that the additional single payment of PMI should have been included in the finance charge and total of payments, by Defendant's own allegations, the difference is only thirty-four dollars ($34.00).  Docket No. 66 at 18.  This difference is well below the $100 tolerance provided by TILA regulations.  12 C.F.R. § 226.18(d)(1).  Because any possible difference between the disclosed costs and the actual cost is less than the statutory $100 tolerance, Plaintiff and GMAC are entitled to summary judgment on this portion of Defendant's Count II.

D. *Plaintiff and GMAC are entitled to summary judgment on Defendant's claim alleging improper refusal to rescind Defendant's mortgage loan.*

Defendant's final theory of relief in Count II is that he was entitled to rescind his loan in mid-2008 and the refusal of Plaintiff and GMAC was a violation.  Docket No. 66.  This portion of the claim is predicated on the success of his other statutory protestations, namely that the TIL was unclear or it disclosed figures outside of the permitted tolerance.  *Id*.  As noted above, US Bank and GMAC complied with all of the statutory requirements and, thus, the rescission timeline cannot be elongated.  This final theory must fail, then, because TILA and Maine TILA provide only a three-day right of rescission.  15 U.S.C. § 1635(a); 9-A M.R.S.A. § 8-204(1).  This deadline may be extended to three-years only when another violation of TILA or Maine TILA exists.  15 U.S.C. § 1635(f) ; 9-A M.R.S.A. § 8-204(6).  As set forth above, no independent violation of TILA or Maine TILA exists.  *See supra* Section III.A.  Without such a violation, Defendant's rescission right terminated in July of 2005, three days after closing on the subject mortgage loan.  15 U.S.C. § 1635(a); 9-A M.R.S.A. § 8-204(1).  His claim was not brought until almost three years later in 2008.  Docket No. 66 at 19.  Because Defendant had no right to demand rescission in 2008, his rescission attempt was time barred and Plaintiff and GMAC are entitled to summary judgment on Defendant's Count II.

E.   *Plaintiff and GMAC are entitled to judgment on Defendant's Count II because any errors were not apparent on the face of the disclosure statement.*

Assignee lenders "cannot be subject to damages for failing to comply with a notice to rescind issued under Section 1635 when the underlying basis for the rescission is a disclosure violation not apparent on the face of the disclosure statement."  *Bills v BNC Mortg., Inc.*, 502 F. Supp 2d 773, 776 (N.D. Ill. 2007); s*ee also* 15 U.S.C. § 1641; 9-A M.R.S.A. §§ 8-209(5) (both setting a limit on assignee liability).  "[A]ssignees generally have not been on the hook for statutory damages, costs, or attorney's fees where the underlying TILA violation was not apparent on the face of the document in question."  *Hubbard v. Ameriquest Mortg. Co.*, 2008

U.S. Dist. LEXIS 75799, 25 (N.D. Ill. Sept. 30, 2008).  A violation is apparent on the face of the

TIL when "disclosure can be determined to be incomplete or inaccurate by a comparison among

the [TIL], any itemizations of the amount financed, the note or any other disclosure of

disbursement."  15 U.S.C. § 1641(e)(2), 9-A M.R.S.A. § 8-209(5)(B); *see Cooper v. First Gov't*

*Mortg. & Investors Corp.*, 238 F. Supp. 2d 50, 55 (D.D.C. 2002).  The determination of whether

a disclosure met the requirements of TILA is a matter **for the Court to decide**.  *Santos-Rodriguez*

485 F.3d at 19; *Palmer*, 465 F.3d 24 at 28.

     "The Eleventh Circuit has recently explained that the TILA does not impose a duty upon

assignees to determine whether appropriate disclosures were made, other than those apparent on

the face of the document. . . .  Where the fact of a TILA violation depends on extrinsic

knowledge, for instance charges made but not shown on the disclosure statement, the assignee

will not be liable under the TILA."  *Jones v. GMAC (In re Jones)*, 2007 Bankr. LEXIS 2049, 34-

35 (Bankr. N.D. Ala. June 13, 2007); *see also Ramadan v. Chase Manhattan Corp.*, 229 F.3d

194, 198 (3d Cir. 2000).  "Congress has created a general rule . . . that assignees are not liable

when they are neither responsible nor on notice of a creditor's violation."  *Payton v. New*

*Century Mortg. Corp.*, 2003 U.S. Dist. LEXIS 18366, *22 (N.D. Ill. 2003).  This rule governs

this case and is fatal to defendant's claims.

     Defendant has alleged the following TILA and Maine TILA violations: (1) the TIL was

unclear because it did not indicate PMI was required and (2) the total of payments shown on the

TIL was incorrect because it didn't include one $34 payment of PMI that has not yet been

charged and may never be charged.  However, as explained *infra*, there is no requirement that

PMI be specifically noticed on the TIL, merely that the *cost* of PMI must be included in the

payments shown on the TIL.  *See infra*, Sections III.A.i-ii.  In addition, cost of PMI was included

in the TIL provided to Defendant.  SOMF ¶ 44.  The TIL included all the information required

by TILA and Maine TILA and was closely mirrored on the model forms provided by regulators.

*See infra*, Section III.A.i.  Plaintiff and GMAC had no obligation to look beyond the face of

these perfectly compliant forms that were used on a daily basis for thousands of mortgage loan

transactions.  *Jones*, 2007 Bankr. LEXIS 2049 at 34; *Ramadan*, 229 F.3d at 198.  They also

cannot be held liable if the Court determines now that the TIL was inaccurate.  15 U.S.C. § 1634

("[i]f information disclosed in accordance with this Article is subsequently rendered inaccurate

as the result of any act, occurrence or agreement subsequent to the delivery of the required

disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part."); 9-A

M.R.S.A. § 8-203 (same).  Because the TIL provided to Defendant had no apparent

shortcomings, Plaintiff and GMAC are insulated from Defendant's claim that the TILA was

unclear, and entitles to judgment at this stage.

The second alleged TILA violation is that the total of payments shown on the TIL was

short by $34.  To show this, Defendant points to an amortization table provided to Defendant by

Quicken.  SOMF ¶ 51.  The first problem with this evidence is that this amortization table was

not provided to Plaintiff or GMAC upon assignment of the loan and it was only produced from

the files of Quicken and Defendant.  SOMF ¶ 51.  Thus, no comparison of documents would

have revealed a violation on the face of any documents.  The second problem with this allegation

is that it hinges on Defendant being charged 172 payments with PMI rather than 171 payments.

Even if Defendant had made every payment between the first one due and today he would only

have made fifty-seven payments.  *See* SOMF Ex. M.  The mere existence of this lawsuit shows

Defendant did not even make those payments (approximately one-third of the 172 payments),

and the evidence supports that conclusion.  SOMF ¶¶ 13, 14, 22-24.  This provides Plaintiff and

GMAC plenty of time (almost ten years) to correct any possible error so that Defendant is not charged an extra $34, even assuming payments had continued. *See* SOMF Ex. M.

The third, and final, problem with this allegation is that any variation from the disclosed charges and the actual charges is within the threshold ($100) established by regulation. *See infra* Section III.A.i. If the charges were within the acceptable range there could be no violation on the face of the documents. Plaintiff and GMAC are entitled to summary judgment because none of the alleged TILA or Maine TILA violations were apparent on the face of the documents.

**IV. Plaintiff is entitled to summary judgment on Defendant's RESPA and MCCC escrow claims because Plaintiff was not a servicer and did not hold or control funds of a consumer and such claims are barred by the law of the case (Counterclaim, Count III).**

Plaintiff is not the servicer of Defendant's Mortgage loan, as that term is defined in RESPA or the MCCC. SOMF ¶ 62; 12 U.S.C. § 2605(i) (defining servicer for purposes of the Real Estate Settlement Procedures Act); 9-A M.R.S.A. § 8-103(Z). As a result, Plaintiff is entitled to summary judgment on Counterclaim Count III. 12 U.S.C. § 2605(g); *see also McCarley v. KPMG Int'l*, 293 Fed. Appx. 719, 722 (11th Cir. 2008). Additionally, the Court has previously dismissed all RESPA and MCCC claims against Plaintiff on a finding that Plaintiff was not servicer of Defendant's mortgage loan. Docket No. 29.

**V. GMAC is entitled to summary judgment because no evidence shows a violation of RESPA or the MCCC (Counterclaim, Count III).**

Defendant's Counterclaim, Count III, alleges violations of the escrow maintenance rules of RESPA and MCCC. Docket No. 66 at 19-21; *see* 12 U.S.C. § 2605; 9-A M.R.S.A. §§ 9-305-A, 9-405. The basis for this claim is that GMAC mismanaged the escrow account for Defendant's mortgage loan. Docket No. 66 at ¶ 95. Unfortunately for Defendant, mere mismanagement of an escrow account does not create a violation of RESPA or the MCCC. *Jacques v. U.S. Bank N.A.*, 416 B.R. 63, 74 (Bankr. E.D.N.Y. 2009) (finding allegations of

escrow account mismanagement did not state a claim under RESPA).  "To state a claim under Section 2605 of RESPA, a plaintiff must allege that the defendant violated a statutory duty under this section, as well as actual pecuniary damages and proximate causation."  *Id* at 70.  Similarly, an incorrect charge to an escrow account, does not prove a violation of these laws if the servicer otherwise complied with their requirements.  *Id* at 74.

The MCCC specifically states a "servicer that holds or controls funds of a consumer in an escrow account for the payment of taxes or insurance premiums shall make timely payments from that escrow account."  9-A M.R.S.A. § 9-305-A.  This section says nothing about force-placed insurance, the cost of force-placed insurance, imposition of disputed fees, or the accuracy of default notices.  *See id.*  Similarly, RESPA requires servicers to make escrow payments in a timely manner.  12 U.S.C. § 2605(g).  Additional requirements imposed by RESPA include a requirement that borrowers be notified of an assignment of a mortgage or the servicing rights to that mortgage (§ 2605(b) and (c)), a prohibition on charging late fees after an assignment if the payment was received timely by the assignor servicer (§ 2605(d)) and a requirement that servicers respond to information requests from borrowers (§ 2605(e)).  Again, nothing speaks to force-placed insurance, the cost of such insurance, imposition of disputed fees or the accuracy of default notices.  *See* 12 U.S.C. § 2605.  Because Defendant's (even if true, which GMAC disputes) claims amount to no more than mismanagement of the escrow account, GMAC cannot be found liable for violating any specific requirement of RESPA or the MCCC and is thus entitles to summary judgment on the same.  *See Jacques*, 416 B.R. at 74.[9]

**VI.  Plaintiff and GMAC are entitled to summary judgment on Defendant's UTPA claim because none of the allegations raised in Defendant's claim are unfair or deceptive (Counterclaim, Count IV).**

---

[9] Defendant's allegation that GMAC failed to correct errors in the escrow account does not constitute a violation of RESPA because, as admitted by Defendant, GMAC took the procedural steps required to respond to his qualified written request.  Docket No. 66 at ¶ 105; SOMF ¶ 89; *Jacques*, 416 B.R. at 74.

Defendant's Count IV alleges violations of the Maine Unfair Trade Practices Act ("UTPA").  Docket No. 66 at 21.  To avoid judgment on this claim, Defendant must cite facts showing Plaintiff and/or GMAC engaged in unfair or deceptive acts while transacting business with a consumer *and* the acts caused Defendant to lose money or property.  5 M.R.S.A. § 213.

"In order to justify a finding of unfairness the act or practice: (1) must cause, or be likely to cause, *substantial* injury to consumers (2) that is not reasonably avoidable by consumers and (3) that is not outweighed by any countervailing benefits to consumers or competition."  *GxG Mgmt. LLC v. Young Bros. & Co.*, 2007 U.S. Dist. LEXIS 12337, 22-24 (D. Me. 2007) (emphasis added) (*citing State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200, 206).  "An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances."  *Weinschenk*, 2005 ME at ¶ 17, 868 A.2d at 206.  "To be a violation of [UTPA] it is not enough that the act or practice be a violation of a particular statute, it must also be unfair or deceptive."  *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987).

Defendant alleges the following acts were unfair or deceptive in violation of UTPA: (a) failing to provide clear and concise disclosures of the material terms of the loan; (b) failing to provide material disclosure of the terms of the loan; (c) miscalculating and misappropriating funds in Defendant's account; (d) sending notice of default; (e) refusing Defendant's cure attempt; (f) filing foreclosure even though Defendant offered to cure; (g) bringing foreclosure based on miscalculations and misappropriation of funds in Defendant's account; (h) failure to provide annual escrow statements to Defendant; and (i) failing to perform escrow analysis on Defendant's account.  Analyzing each of these in turn it becomes clear, in seeing the trees for the

forest Defendant attempts to create, that - individually or taken together – these allegations fail to create UTPA liability.

As explained above, Plaintiff and GMAC are not liable to Defendant for violations of TILA or Maine TILA because all the required closing notices and disclosures were provided and each was legally compliant.  *See supra* Section III.  They provided clear and concise disclosure of the material terms of Defendant's mortgage loan.  Although Defendant may argue different or additional disclosure was possible, it simply was not required.  Provision of legally compliant and required disclosures cannot be considered either unfair or deceptive.  Additionally, Defendant cannot show that either GMAC or Plaintiff provided these disclosures.  SOMF ¶¶ 63-64, 70.  UTPA liability only attaches to the party that performed the unfair or deceptive act.  5 M.R.S.A. § 213(1).  As a result Defendant's first allegations, (a) and (b) above, cannot form the basis for liability under UTPA.

The next allegation, item (c) above, is that the funds in Defendant's account were miscalculated and misappropriated.  This must refer to Defendant's escrow account maintained by GMAC.  SOMF ¶ 62.  Plaintiff cannot be liable for anything related to the Defendant's escrow account because it was not the servicer of Defendant's loan and thus did not perform the offending act.  *Id*.  Proceeding on a leap of faith, one assumes Defendant specifically complains of the issues related to forced-placed hazard insurance on the mortgaged property.  Assuming, *arguendo*, that inadvertent mismanagement could be considered unfair or deceptive, Defendant cannot realistically argue he did not have ample opportunity to avoid any injury caused by it.  *GxG Mgmt. LLC*, 2007 U.S. Dist. LEXIS 12337 at 24 (confirming an act is only unfair if a consumer cannot avoid the injury from it).  He was provided with multiple notices over several years of the placed insurance and upon each notice was invited to submit evidence of his own

coverage.  SOMF ¶¶ 54-57; 67.  It was not until after the commencement of this foreclosure

action that Defendant took the time to provide evidence of continuous property insurance even

though it was his obligation under the Mortgage to maintain such insurance.  SOMF ¶ 58 and

Stephan Aff. Ex. B at ¶3.  This cannot be considered unfair or deceptive because Defendant had

repeated and regular opportunities to correct any alleged, accidental errors in his escrow account.

Additionally, a simple error, such as a breach of contract, is not a violation of UTPA.  *See GxG*

*Mgmt. LLC*, 2007 U.S. Dist. LEXIS 12337 at 24.  For these reasons Defendant's third allegation

cannot form the basis of UTPA liability.

Defendant's allegations (d), (e), (f)  and (g) all relate to the notice of default, his failed

cure attempt and the ensuing foreclosure complaint.  As set forth above in Section II, *supra*, the

notice was sent based on the fact that Defendant had failed to make monthly payments since

early November 2007.  SOMF ¶¶ 13, 14, 22-24.  It was not unfair or deceptive to send Defendant

a notice of this fact as he concedes those payments were not made.  *Id*.  Defendant's cure

payment initially could not be credited to his account and subsequently was received after the

cure deadline, thus it was legally irrelevant.  SOMF ¶¶ 34-35.  GMAC's efforts to try to match

the payment with an account and then rejecting the payment after the deadline cannot be

considered either deceptive or unfair, especially when it was well within Defendant's ability to

make the cure payment earlier and/or with more care.  SOMF ¶¶ 27 and 30.  His own negligence

led to the failure to cure, not any acts by Plaintiff or GMAC.  *Id*.  The Defendant's admitted

failure to make payments is the true reason for the foreclosure and not a miscalculation in the

escrow accounting.  SOMF ¶ 13, 14, 22-24.  The fact that Plaintiff sought to enforce its legal

rights to foreclosure even though Defendant *offered* to cure by making an insufficient payment

after the cure deadline is also of no legal import.  Enforcing contractual rights cannot be

considered unfair or deceptive unless the contract was objectively unconscionable, an argument that Defendant has not made and would not be supported by the terms of the Note and the Mortgage.  *See* Docket No. 66 (lacking allegation of unconscionable contract terms).

Finally, contrary to Defendant's allegations, GMAC did, in fact, perform annual escrow analysis and sent the annual escrow statements to Defendant's mailing address.  SOMF ¶ 59. Defendant's own mail-handling procedures may have contributed to his confusion in this regard, but it does not diminish the fact that GMAC performed analysis and notices as required by RESPA.  SOMF ¶ 73; 24 C.F.R. § 3500.17(i).  This basic evidence is fatal to the final bases ((h) and (j) above) for Defendant's UTPA claim.  Because none of Defendant's allegations are unfair or deceptive, Plaintiff and GMAC are entitled to summary judgment on Defendant's Count IV.

## VII. Plaintiff and GMAC are entitled to judgment on Defendant's Emotional Distress Claim (Counterclaim, Count V).

Defendant's final Count alleges that all parties have intentionally or negligently caused him severe emotional distress.  To recover on such claim, Defendant must show intentional or negligent acts by Plaintiff or GMAC that were "extreme and outrageous", exceeded "all possible bounds of decency" and are "utterly intolerable in a civilized community."  *See*, *e.g.*, *Hoffman v. Connecticut*, 2009 U.S. Dist. LEXIS 92340, 52-54 (D. Me. 2009); *Johnson v. Town of Gorham*, 2008 U.S. Dist. LEXIS 89670, 29-30 (D. Me. 2008); Restatement (Second) Torts § 46. Defendant must also prove that he "has suffered severe emotional distress that no ordinary person could reasonably endure."  *Hoffman*, 2009 U.S. Dist. LEXIS at 53.  Defendant fails to make any of the required showings and thus Plaintiff and GMAC are entitled to judgment in their favor.

*A.   Plaintiff and GMAC are entitled to judgment on Defendant's Negligent Emotional Distress Claim because they owed him no duty.*

Defendant's final Count alleges that all parties have negligently caused him severe emotional distress ("NIED claim").  In order to avoid judgment on this claim Defendant must show: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm.  *See, e.g.*, *Descoteau v. United States,* 2009 U.S. Dist. LEXIS 66677, 15-16 (D. Me., May 27, 2009).  "There is no . . . general duty to avoid negligently causing emotional harm to others" and thus a duty only exists in "very limited circumstances."  *Id.*  These include: (a) bystander liability actions, (b) circumstances of a special relationship and (c) situations where the wrongdoer also committed another tort. *Id.*  This is not a bystander liability case.  Docket No. 66 (alleging no bystander liability claims).  Defendant has not alleged any independent tort that would support his NIED claim.  *Id.*  Defendant's only remaining basis for NIED liability is to prove a special relationship existed between Plaintiff and/or GMAC and Defendant.  *Descoteau*, 2009 U.S. Dist. LEXIS 66677 at 16.  No credible evidence supports such a finding.

Maine courts have found a special relationship only in very few situations.  These include a doctor-patient relationship, a therapist-patient relationship, the relationship between a hospital and family members of a deceased patient and a student-teacher relationship.  *Descoteau v. Analogic Corp.*, 2010 U.S. Dist. LEXIS 4903, 20 (D. Me., Jan. 21, 2010); *C.B. v. Me. Sch. Admin. Dist. No. 40*, 2008 U.S. Dist. LEXIS 58236, 18-22 (D. Me., July 28, 2008).  The relationships of the parties do not fit into any of these categories.

In fact, none of those relationships are present in this case, nor are they substantially similar to the relationships between the parties in this matter.  The only relationship between Plaintiff and Defendant is that as parties to (or assignees of) a contract.  SOMF ¶¶ 1-5; 62.  These parties had no direct correspondence.  *Id.*  This cannot be considered the same as or even similar

27

to a doctor-patient or student-teacher relationship.  *See Descoteau v. Analogic Corp.*, 2010 U.S. Dist. LEXIS 4903 at 20 (citing cases in which a special relationship was found); *C.B. v. Me. Sch. Admin. Dist. No. 40*, 2008 U.S. Dist. LEXIS 58236 at 18.  Similarly, GMAC's relationship with Defendant is as the servicer of his mortgage loan.  SOMF ¶ 62.  Although there was direct correspondence between them, there is no basis to find this relationship similar to that of a therapist and her patient.  *See, e.g.,* SOMF ¶¶ 54-55, 59 and Ex. C; s*ee Descoteau v. Analogic Corp.*, 2010 U.S. Dist. LEXIS 4903 at 20; *but see* SOMF ¶¶ 75 to 84 (records of Defendant's sessions with his own therapist in which he discusses emotional issues not discussed with GMAC).  Defendant does not bring forth anything other than empty allegations without basis in law or fact to support the claims.  Merely saying "special relationship" repeatedly is insufficient at this stage.  *McCarthy* 56 F.3d at 315 (noting the court may ignore conclusory allegations and unsupported speculation); *Descoteau v. Analogic Corp.*, 2010 U.S. Dist. LEXIS 4903 at 21-22 (noting the court's general reluctance to expand on the list of recognized special relationship).  Because no credible facts support the conclusion that Plaintiff or GMAC had a special relationship with Defendant that required them to take special care to avoid causing him emotional distress, US Bank and GMAC are entitled to judgment on Defendant's Count V.

   B.   *Plaintiff and GMAC are entitled to judgment on Defendant's Intentional Infliction of Emotional Distress Claim because their actions were not extreme and outrageous.*

Defendant's claim for intentional infliction of emotional distress ("IIED") must fail unless he presents credible evidence that the actions of Plaintiff and GMAC were "extreme and outrageous", exceeded "all possible bounds of decency" and are "utterly intolerable in a civilized community."  *See*, *e.g.*, *Hoffman*, 2009 U.S. Dist. LEXIS at 52-54; *Johnson*, 2008 U.S. Dist. LEXIS at 29-30; Restatement (Second) Torts § 46.  "The determination of extreme and

outrageous conduct from undisputed facts is an issue for the court." *Gray v.* State, 624 A.2d 479, 484 (Me. 1993).

Although Count V does not specify what actions caused his emotional distress, Defendant's claim can only be based on alleged TILA violations, alleged mismanagement of his escrow account and alleged improper foreclosure action as the parties had no other dealings. Docket No. 66. The last claim can quickly be disregarded because Maine law does not recognize a claim for IIED for a party upset by the filing of a lawsuit against it.[10] *Hoffman* at 54; SOMF ¶ 45. Additionally, to the extent Defendant's claim is based on a breach of a contract to maintain his escrow account, "[t]he general rule is that damages for emotional distress as a result of a breach of contract are not recoverable." McAfee v. Wright, 651 A.2d 371, 372 (Me. 1994). Beyond that, none of the claims reach the level of extreme acts that are required for an IIED claim in Maine. *See Johnson* 208 U.S. Dist. LEXIS at 29-30 (ruling a plaintiff's claim for IIED could remain on a showing he was severely beaten by several police officers); *Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 185 (D. Me. 2009) (allowing an IIED claim to proceed on a showing that a police officer's malicious attack resulted in a severely broken leg). Additionally, Defendant cannot show that Plaintiff or GMAC *intended to* or *knowingly* caused his extreme emotional distress or that the actions were *substantially certain* to cause severe emotional distress. Restatement (Second) Torts §8A. This further dooms his claim of IIED.

When courts in other jurisdictions found intentional infliction of emotional distress in the context of consumer collection matter, it was faced with truly extreme treatment of the debtor by the collecting lender. *See Rodrigues v. J.P. Morgan Chase Bank*, 2009 U.S. Dist. LEXIS 102502, 20-24 (D. Conn., Nov. 3, 2009) *discussing Margita v. Diamond Mortg. Corp.*, 406

---

[10] This is particularly relevant in this case where Defendant admits he is primarily upset about the foreclosure litigation and his distress did not start until well after the commencement of the litigation. SOMF ¶¶ 74, 76, 80-82, 86.

N.W.2d 268 (Mich. App. 1987).  In the case of *Margita* the lender harassed the consumer daily for *nearly two years* with *vulgar* and abusive phone calls, threatening to collect debts that were not overdue.  406 N.W. 2d at 269, 272.  No evidence of similar behavior has been produced in the current case.

The current case is more similar to one in which the lender proceeded with foreclosure after the borrower had disputed the claimed default.  *Rodrigues*, 2009 U.S. Dist. LEXIS at 22-23. The court in *Rodrigues* concluded such action by the lender was not sufficiently extreme or outrageous to make it liable for IIED.  *Id*.  Similarly, another court found no extreme or outrageous conduct when a lender filed a foreclosure action after determining that no default existed.  *Deutsche Bank v. Lichtenfels*, 2009 Conn. Super. LEXIS 1732 (Conn. Super. June 17, 2009).  In that case the court determined that administrative errors and a lack of responsiveness did not constitute extreme or outrageous behavior.  *Id* at 10, 13; *see also Jacques v. U.S. Bank N.A.*, 416 B.R. 63 (Bankr. E.D.N.Y. 2009) (ruling that debt collection efforts were not extreme or outrageous).  Because Plaintiff and/or GMAC's conduct in this case at most rises to the level of unintentional administrative errors it cannot be considered extreme or outrageous and Plaintiff and GMAC are entitled to summary judgment on Defendant's IIED claim.

C.   *Plaintiff and GMAC are entitled to judgment on Defendant's Count V because Defendant did not suffer severe emotional distress due to their actions.*

Even if Defendant could show the actions of Plaintiff and GMAC were extreme and outrageous, he cannot show he "suffered severe emotional distress that no ordinary person could reasonably endure."  *Hoffman*, 2009 U.S. Dist. LEXIS at 53; *Donovan v. Bank of Am.*, 574 F. Supp. 2d 192, 202 (D. Me. 2008).  "[S]evere emotional distress is usually manifested by shock, illness or other bodily harm", although such symptoms are not always required if the defendant's behavior was truly extreme and outrageous. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148,

154 (Me. 1979).  "As examples of when a court may infer emotional distress from conduct alone, the Restatement[s] provides the following: falsely informing someone that their child has died, and informing someone that they are going to be lynched."  *Lewis v. Good Will Home Ass'n,* 2007 Me. Super. LEXIS 240, 15-16 (Me. Super. Ct. Nov. 28, 2007).

Severe emotional distress has been found when the injured party suffered throbbing headaches, serious depression and neck cramps that required the use of muscle relaxants.  *Town of Stonington v. Galilean Gospel Temple*, 722 A.2d 1269, 1272 (Me. 1999).  The admissible evidence shows that Defendant's emotional distress consisted of irritability, some lost sleep and anger.  SOMF ¶¶ 71-72, 79, 81-84, 86-88.  He admits he did not seek therapy until November 1, 2009, some twenty-one months after he received notice of his default and nearly ten months after the foreclosure complaint was filed.  SOMF ¶¶ 74-76.[11]  *See Donovan*, 574 F. Supp. at 201. These symptoms do not rise above distress that ordinary persons cannot endure.  *Vicnire*, 401 A.2d at 155 (finding no severe distress when plaintiff was "kind of down", "mad" and "nervous"); s*ee also Lawson v. Boeing Co.*, 792 P.2d 545, 551 (Wash. Ct. App. 1990) (noting that symptoms of depression, loss of appetite, libido and energy, sleeplessness and increased headaches were not signs of severe distress); *McDermott v. Town of Windham*, 204 F. Supp. 2d 54, 71-72 (D. Me. 2002) (declining to find severe distress based on plaintiff's allegations that were not supported by documentary evidence or a physical symptoms); *Forbis v. City of Portland*, 2003 U.S. Dist. LEXIS 8957, 67 (D. Me. May 29, 2003).

---

[11] Defendant did not offer any expert testimony to show either (1) his emotional distress was severe or (2) it was caused by the actions of Plaintiff or GMAC.  Lack of such expert testimony should be fatal in this case where Defendant has experienced numerous other life events that could have caused his emotional distress, which requires expert tesimony.  SOMF ¶ 78; *see Dimmitt v. Ockenfels*, 220 F.R.D. 116, 120 (D. Me. 2004) (ruling expert testimony was required to show causation of depression); *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1187-1188 (1st Cir. R.I. 1996) ("Because Andrade's own testimony and conclusions regarding the cause of her physical symptoms, by themselves, were insufficient to allow a jury to find the requisite nexus between her distress and the May 8, 1991 termination, an element of the prima facie case for IIED was not satisfied").  It would be rank speculation to find that the actions of GMAC or Plaintiff cause Defendant's emotional distress rather than those other events.

"Even if the distress that [Defendant] claims he suffered was, in actuality, severe, he still must show that the harm alleged reasonably could have been expected to befall the ordinarily sensitive person." *Holland v. Sebunya*, 2000 ME 160, ¶ 18 (Me. 2000).  It is understandable that most people would experience distress when facing foreclosure of their mortgage and the loss of their house.  SOMF ¶ 85.  However, this is a type of distress that Defendant shares with millions of other Americans and thousands of other Mainers currently facing a similar situation.  "[I]t cannot be said that the ordinarily sensitive person would be unable to adequately cope with the mental stress engendered" by Defendant's experience.  *Id*.  Because the admissible evidence shows Defendant's distress was not severe and most people could cope with it, Plaintiff and GMAC are entitled to judgment on Defendant's Count V.

**CONCLUSION**

For all of the foregoing reasons (each of which is separate and independent), Plaintiff and GMAC respectfully request judgment in their favor and against Defendant on Plaintiff's First Amended Complaint and on the entirety of Defendant's First Amended Complaint, Affirmative Defenses, Counterclaims and Third Party Complaint.

Respectfully submitted,

Dated: April 26, 2010

/s/ Alexander W. Saksen
Alexander W. Saksen, Esq.
Bar No. 4220

/s/ Nathaniel R. Huckel-Bauer/
Nathaniel R. Huckel-Bauer
Bar No. 4012
Counsel for US Bank and GMAC

Of the firm:
Drummond & Drummond, LLP
One Monument Way
Portland, ME  04101
207-774-0317

**CERTIFICATE OF SERVICE**

I, Alexander W. Saksen, hereby certify that I am over eighteen years old and caused a true and correct copy of Plaintiff's and Third Party Defendant GMAC Mortgage, LLC's Motion for Summary Judgment Pursuant to F.R.C.P. 56 and Incorporated Memorandum of Law electronically served on the parties at the addresses set forth on the Service List attached hereto.

Dated at Portland, Maine, this 26th day of April, 2010.

By: */s/ Alexander W. Saksen*
Alexander W. Saksen