## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION** *as Trustee for BAFC2006-1 TRUST,* | ) ) ) | |
| *Plaintiff* | ) ) | |
| *v.* | ) ) | **Civil No. 09-84-P-JHR** |
| **GORDON T. JAMES,** | ) ) | |
| *Defendant* | ) ) | |
| *v.* | ) ) | |
| **GMAC MORTGAGE, LLC, et al.,** | ) ) | |
| *Third-Party Defendants* | ) | |

### MEMORANDUM DECISION ON MOTION TO EXCLUDE EXPERT TESTIMONY

The plaintiff and a third-party defendant, GMAC Mortgage, LLC, move *in limine* to exclude the testimony of Kevin P. Byers, designated as an expert witness by the defendant. Plaintiff's and Third Party Defendant GMAC Mortgage, LLC's Motion *in Limine* to Exclude Expert Testimony by Kevin P. Byers ("Motion") (Docket No. 85) at 1. Specifically, they contend that Byers' testimony, as presented in the defendant's expert witness disclosure and at deposition, must be excluded because (1) "his methodology is fatally flawed and therefore unreliable," (2) "his testimony will be based on legal conclusions and speculation," and (3) "the scope of his testimony and his conclusions can be derived from simple logic." *Id.* at 5. I grant the motion in part.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006). With respect to reliability:

> In *Daubert,* the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline. However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.") (citation and internal quotation marks omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted). "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id*. (citation and internal quotation marks omitted). That said, "nothing in

either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

In the case at hand, the defendant devotes some time and effort to setting out Byers' qualifications, Defendant's Response in Opposition to Plaintiff's Motion *In Limine* to Exclude Expert Testimony ("Opposition") (Docket No. 117) at 3-4, but the moving parties do not challenge Byers' qualifications. Plaintiff's and Third Party Defendant GMAC Mortgage, LLC's Reply to Defendant's Opposition to Motion *in Limine* to Exclude Expert Testimony by Kevin P. Byers ("Reply") (Docket No. 126) at 2. Rather, the moving parties attack Byers' conclusions, in the order in which he presents them, on a variety of substantive bases.

## I. The First Conclusion

Byers' first conclusion is the following:

> Gordon James incurred monetary damages of at least $14,410.86 due to unjustified lender-placed insurance premiums by loan servicer GMAC Mortgage that had not been credited back to the escrow account as of February 20, 2009.

Report of Kevin P. Byers, CPA ("Byers Report") (attached to Affidavit of Kevin P. Byers, CPA (Docket No. 117-1)) at [3]. The moving parties first argue that this conclusion is "simply and clearly wrong making [Byers'] testimony not only unhelpful to the jury, and therefore unreliable, but dangerously misleading." Motion at 8. This is so, they assert, because Byers double-counted a "surplus" that Byers said should have appeared in the defendant's mortgage account.

However, mathematical errors of this sort are not grounds for excluding an expert opinion. *Baldwin v. Bader*, 539 F.Supp.2d 443, 445-46 (D. Me. 2008). If Byers hews to these

figures in trial testimony, any mistakes that the plaintiff can demonstrate go to the weight to be given that testimony, not to its admissibility. *Smith v. Pfizer Inc.*, No. 3:05-0444, __ F.Supp.2d __, 2010 WL 1752541 (M.D.Tenn. Apr. 29, 2010), at *4.

The moving parties next challenge Byers' testimony on the grounds that the following statements made in connection with his first conclusion are unsupported by evidence or analysis and, therefore, create "[t]he danger that the jury could be completely misled, if not, at a minimum, completely confused," so that all of Byers' testimony must be excluded as "inherently unhelpful to the factfinder [as follows:]" characterizing the insurance documentation in the plaintiff's file on the defendant's loan as "fraught with problems" that "caus[ed] the improper force-placing of insurance by GMAC"; characterizing the lender-placed insurance premiums as "unjustified"; characterizing the premiums on the lender-placed insurance as "unusually high"; and "[h]ad GMAC provided minimum diligence in response to Mr. James['s] insurance and escrow disputes by simply calling his insurance agent or carrier, the existence of a policy could have averted this dispute even before the first lender-placed premium was paid in January 2006[.]" Motion at 10-11. They also contend that these statements, along with the use of the term "monetary damages," are impermissible statements of legal conclusions. *Id*. at 11.

Expert testimony on purely legal issues "is rarely admissible." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact[.]" *Id*. at 100 (citation omitted). That being said, use of the term "monetary damages" does not, in itself, constitute a legal conclusion. The other statements to which the moving parties object may or may not constitute legal conclusions, but they are, in any event, statements that are not supported by Byers' testimony or the "thorough examination" of the other evidence to which the defendant refers, Opposition at 7-8. In addition,

they are certainly beyond the scope of the defendant's designation of Byers as an expert witness,

set forth, *in toto*, as follows:

> I have been engaged as a forensic accounting expert witness in the above-styled matter to provide opinions on the subjects outlined below:
> - The application of payments posted to the account.
> - The impact on the James servicing history of lender-placed insurance charges.
> - Analysis and chronology of Mr. James' attempts to reinstate his account and the impact on the servicing of the account.
> - Analysis of the monthly payment schedule and total of payments based on the terms of the loan and as disclosed on the 6/30/05 Federal Truth-in-Lending Disclosure by Quicken Loans, Inc.
> - Calculation of damages based on above analysis.

Letter dated November 10, 2009, from Kevin Byers (attached to e-mail from Andrea Bopp Stark

to Alex Saksen and others (Docket No. 85-2) (footnote omitted)).

    This does not mean that all of Byers' testimony must be excluded, however. His

testimony can be pruned of terms that express conclusions about any party's liability.[1]

Specifically, he cannot testify that any party's file on the defendant's mortgage was "fraught

with problems" that "caus[ed] the improper force-placing of insurance by GMAC[,]" or, indeed,

that any particular event, action, practice, or failure to act was the cause of the "force-placing of

insurance." Motion at 10. He cannot testify that the premiums for this insurance were either

"unjustified" or "unusually high." *Id*. He may not testify that "had GMAC provided minimum

diligence in response to Mr. James['s] insurance and escrow disputes by simply calling his

insurance agent or carrier, the existence of a policy could have averted this dispute even before

the first lender-placed premium was paid in January 2006." *Id*. at 11.

    But, Byers may testify about his damages calculations on a conditional basis, as is the

general practice with such expert testimony. Thus, for example, he may be asked whether, or he

---

[1] Interestingly, Byers' letter setting forth the scope of his opinion testimony includes a footnote stating: "The scope of this engagement does not contemplate, require or otherwise constitute the provision . . . of any legal . . . advice or legal conclusions[.]" *Id*.

may state that, *if* certain events, actions, practices, or failures to act of the plaintiff or of a specific third-party defendant were wrongful, then the damage to the defendant resulting from that wrong are a certain amount, and how that amount was determined.  He may testify about each of the opinions listed in his November 10, 2009, letter, so long as that testimony does not include any characterization of any of the subjects of those opinions as legally wrongful, improper, unjustified, or by way of any other pejorative term.

The moving parties also find one or more contradictions in a comparison of Byers' deposition testimony with his written report, Motion at 10-11, but such contradictions, if any, are a matter for cross-examination, going to the weight of the testimony offered by Byers rather than to its admissibility.

Finally, the moving parties assert that Byers' first conclusion "can be arrived at through lay testimony and application of common sense princip[le]s and simple math; thus, there is no need for expert testimony."  Motion at 12.  The case cited by the moving parties in support of this proposition, *United States v. Zajanckauskas*, 441 F.3d 32 (1st Cir. 2006), is distinguishable. In that case, the numbers in the document at issue could not be verified or duplicated; under those conditions, the First Circuit said, the trial judge was entitled "to rely on his own perceptions . . ., his common sense, and his use of simple logic to arrive at what he believed was the 'most plausible meaning' of the . . . number in the report."  *Id*. at 39.  That is quite different from the case at hand, in which all of Byers' calculations should be capable of being duplicated from the information available.

The defendant responds that "[w]hile a lay person might be able to add up each of the figures presented by Mr. Byers in his report, he/she would likely be unable to extract those figures from the voluminous documentation in this case."  Opposition at 9.  Thus, his exercise

will assist the factfinder to determine a fact in issue – the amount of damages claimed by the defendant – and to understand the relevant evidence, in the terms of Rule 702. I conclude that his testimony should not be excluded on this basis.

## II. The Second Conclusion

Byers' second conclusion is the following:

> Gordon James incurred ongoing damages as a proximate result of GMAC Mortgage Corporation's rejection of a timely and full reinstatement payment in February 2008 that led to a wrongful foreclosure action and default fees to date approximating $6,729.50 that should be credited or removed from his account.

Byers Report at 2. The moving parties characterize this statement as "repeatedly" stating impermissible legal conclusions and usurping the role of the factfinder. Motion at 12. They also challenge the statement in Byers' report under the heading of this conclusion to the effect that the "rapid escalation" of the defendant's monthly payments "eventually contributed to an alleged default in or around March 2008 and is directly traceable to servicing errors and inadequate documentation and diligence by GMAC and Quicken." *Id.* at 13.

I agree, for reasons already discussed, that Byers may not testify that the defendant incurred damages as a "proximate result" of anything. He may testify that, if GMAC's rejection of the defendant's proffered payment, which he may *not* characterize as "timely and full," or in any other manner, was wrongful, then the defendant incurred damages in the form of default fees in the current amount. Byers may *not* characterized the foreclosure action as "wrongful," nor may he testify that any default "is directly traceable to servicing errors and inadequate documentation and diligence by GMAC and Quicken," or indeed to any other cause. *Id*.

As so limited, Byers may testify about his second conclusion.

### III.  The Third Conclusion

Byers' third conclusion is the following:

> Mr. James paid a total of $46,152.88 to Quicken and GMAC as of November 30, 2007, enough to satisfy thirty-six (36) scheduled payments plus escrow at his original monthly payment of $1,275.97, or adequate payments to bring him current through the July 1, 2008 scheduled date.

Byers Report at 2.  The moving parties contend that Byers' "admission" at deposition that a lawyer with a calculator could also reach this conclusion means that there is no need for expert testimony on this issue.  Motion at 14.  They also assert that "this analysis . . . has no foothold in reality" because, under the terms of the mortgage note, the payments would not be allocated as Byers' conclusion assumes.  *Id*. at 15.

This situation presents a much closer question than did the moving parties' challenge to Byers' second conclusion.  In this judicial district, "[a] statement of the obvious – which is within the ken of a lay jury or a judge presiding at a bench trial – is not a proper subject of expert testimony."  *Ankuda v. R. N. Fish & Son, Inc.*, 535 F.Supp.2d 170, 174 (D. Me. 2008) (and cases cited therein).  Merely placing an expert's sheen on common sense is not enough.  *Id*.  The arithmetic involved in the first of the two conclusions included in this portion of Byers' report is within the ken of a lay jury.  "'Expert' testimony about matters of common sense is not helpful to a jury and carries the risk of unfair prejudice[.]"  *United States v. Raymond*, 700  F.Supp.2d 142, 150 (D. Me. 2010).  The number of scheduled payments encompassed in $46,152.88 is a matter that counsel can argue to the jury in closing.  It does not need the imprimatur of an "expert."

The concern for undue influence resulting from an expert witness's testimony applies as well to the second statement included in Byers' third conclusion.  As the plaintiff points out,

Motion at 14-15, that statement is incorrect. The date as to which the tendered payment would bring the defendant "current," if it could do so at all, depends upon the terms of the note and mortgage at issue in this action. Under the terms of the note, for example, payments that include principal and interest will be applied to interest before principal, and overdue monthly payments each incur a late charge of 5% of the overdue payment. InterestFirst NOTE, Exh. B to Docket No. 1-1, ¶¶ 3(A), 4, & 6(A). Byers testified that he did not consider the terms of these documents in reaching his third conclusion. Byers Dep. at 62-63.

While it would certainly be possible for the plaintiff and GMAC to show on cross-examination that this portion of Byers' proposed conclusion is erroneous, a jury could be persuaded that Byers was nonetheless correct merely because he was testifying as an expert. Thus, "introducing [his] testimony to a jury invites a toxic mixture of purported expertise and common sense. As the First Circuit has recognized for different expert testimony, "[b]y appearing to put the expert's stamp of approval on [one party's] theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged." *Raymond*, 700 F.Supp.2d at 150. This is not a situation in which the expert "sheen" on common sense would be helpful to a jury. *Cf. Therrien v. Town of Jay*, 489 F.Supp.2d 116, 118 (D. Me. 2007). Rather, it asks a jury to accept a false statement as true.

For these reasons, Byers will not be allowed to testify about the third conclusion set forth in his report.

## IV. Overall Conclusion

For the reasons discussed above, the motion of the plaintiff and defendant GMAC to exclude the testimony of Kevin P. Byers is **GRANTED** in part, as set forth herein, and otherwise **DENIED.**

Dated this 4th day of October, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge